268 N.J. Super. 447 (1993)
633 A.2d 1040
KENNETH R. VITTY, SR., ADMINISTRATOR OF THE ESTATE OF KENNETH ROGER VITTY, JR., PLAINTIFF,
v.
D.C.P. CORP., J.C. TOWING, INC., DEFENDANT-APPELLANT,
v.
THE NEW JERSEY HIGHWAY AUTHORITY, DEFENDANT-RESPONDENT, AND JOSEPH L. VICARO, VERONICA E. GERARDI, THE GARDEN STATE PARKWAY AUTHORITY, DEE & GEE, INC., T/A CONRAD'S, THE ASSEMBLY POINT AND JOHN DOE I (FICTITIOUS NAME USED TO DESCRIBE AN UNKNOWN DEFENDANT), DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 1, 1993.
Decided December 3, 1993.
*449 Before Judges PETRELLA, BAIME and CONLEY.
Cynthia N. Hoen argued the cause for appellant (Maloof, Lebowitz & Bubb, attorneys; Ms. Hoen, on the brief).
Andrew Bayer argued the cause for respondent (DeCotiis & Pinto, attorneys; Mr. Bayer, of counsel; Michael S. Caro, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
*450 The New Jersey Highway Authority (NJHA) engaged J.C. Towing, Inc. (Garage) to perform towing and wrecking services on the Garden State Parkway. As part of the agreement, Garage promised to defend and indemnify liability claims "arising out of" the license contract. Kenneth Vitty, an employee of Garage, was killed when the tow truck in which he was seated was struck by an automobile operated by a drunk driver. At the time of the accident, the tow truck was parked at an official U-turn post and Vitty was on duty. Based on the indemnification clause, NJHA requested Garage to defend it in an action brought by Vitty's estate. Garage refused and NJHA settled the estate's claim for $20,000. NJHA filed a crossclaim in which it sought indemnification for the amount of the settlement and the cost of its defense. The Law Division granted NJHA's motion for summary judgment. Garage appeals and we affirm.

I.
The salient facts are not in dispute. NJHA entered into a license agreement in which Garage was engaged to furnish wrecking, towing and road services on an eight mile stretch of the Garden State Parkway. The agreement provided that, "[w]hen requested[,]" Garage was to "patrol an assigned area." The agreement required Garage to comply with various traffic and safety regulations, including a provision which allowed it to cross the medial strip only at "official crossovers."
The agreement also contained a provision which required Garage to defend and indemnify NJHA for claims "arising out of" the license. This paragraph contained an exception with respect to property damage and personal injury caused by the "sole active negligence" of NJHA. Because of the importance of the indemnification provision to the resolution of the questions presented, we quote it verbatim:
A. GARAGE shall indemnify, defend and save harmless [NJHA], its members, officers, agents, servants, employees and assigns, the State of New Jersey, Division *451 of State Police and its officers and employees from any and all demands, claims, liability, suits, losses, injuries, damages, judgments, expenses and costs of every kind, nature and description arising out of this License; expressly including but not limited to the cost of labor, materials, or supplies, counsel fees, cost of court, costs of investigation, experts and witnesses and amounts paid in settlement; except that this provision shall not extend to property damage or personal injury caused by the sole active negligence of [NJHA], its members, officers, agents, servant or employees.
B. GARAGE hereby releases [NJHA], its members, officers, agents, servants, employees and assigns from any and all liability and casualty claims of GARAGE arising out of this License except that this provision shall not extend to property damage or personal injury caused by the sole active negligence of [NJHA], its members, officers, agents and employees. [Emphasis added.]
Under the agreement, Garage was required to obtain insurance coverage sufficient to "completely protect [it] and [NJHA], [their] members, officers, agents, servants, employees and assigns against any and all risks of loss or liability arising out of this [l]icense." The agreement further provided that Garage was fully responsible "for all liability and casualty claims or losses" beyond the insurance coverage.
On March 28, 1988, Vitty was seated in his tow truck which was parked at an official U-turn within Garage's designated territory. Although Vitty was not engaged in towing or wrecking activities, it is undisputed that he was on duty and acting in the performance of his employment responsibilities. Joseph Vicaro, who had been drinking, was driving in the southbound lane when he sped into the rear of a car driven by Veronica Gerardi. Vicaro's automobile proceeded onto the grass median where it became airborne and crashed into the tow truck. Vitty died instantly.
On November 30, 1988, Vitty's estate instituted an action against Vicaro, Gerardi, NJHA, Garage and two taverns which had served Vicaro alcoholic beverages immediately prior to the accident. The suit against NJHA was predicated on the thesis that the highway median was defective because it sloped upward to the crossover, causing Vicaro's automobile to become airborne. Vitty's estate also pointed to NJHA's failure to place a guardrail in the U-turn area. Prior to trial, the Law Division dismissed all claims against Garage except that of NJHA relating to the indemnification *452 agreement. The court found that Garage was bound by the license to defend and indemnify NJHA, reasoning that the accident "arose out of" the agreement. NJHA settled the estate's claim for $20,000. The trial proceeded against the remaining defendants. The jury ultimately found Vicaro completely at fault. NJHA was subsequently awarded $20,000, the amount of its settlement with the Vitty estate, and $38,960, the sum of its defense costs. This appeal followed.

II.
Garage contends that Vitty's death resulted, not from the towing and wrecking contract, but from Vicaro's drunk driving. It is argued that the phrase "arising out of" connotes causality and that its obligation to defend and indemnify NJHA was triggered only where the claimant's injuries were the result of Garage's towing activities.
We disagree. Indemnity agreements are interpreted in accordance with the rules governing the construction of contracts generally. Ramos v. Browning Ferris Indus., 103 N.J. 177, 191, 510 A.2d 1152 (1986) (citing Cozzi v. Owens Corning Fiber Glass Corp., 63 N.J. Super. 117, 121, 164 A.2d 69 (App.Div. 1960); Longi v. Raymond-Commerce Corp., 34 N.J. Super. 593, 603, 113 A.2d 69 (App.Div. 1955)). When the meaning of the clause is ambiguous, it should be strictly construed against the indemnitee. Ramos v. Browning Ferris Indus., 103 N.J. at 191, 510 A.2d 1152. We are nonetheless obliged to construe the clause in a manner consonant with its essential purpose and with the objects the parties were striving to achieve. Stier v. Shop Rite, 201 N.J. Super. 142, 151, 492 A.2d 1055 (App.Div. 1985); see also George M. Brewster & Son, Inc. v. Catalytic Constr. Co., 17 N.J. 20, 32, 109 A.2d 805 (1954).
Within this analytical framework, we reject the contention that the phrase "arising out of" requires that the injury or property damage sustained must be the direct and proximate *453 result of the performance of towing services in order for the indemnification clause to be triggered. Specifically, the license does not require that the claim of the injured party be directly and proximately caused by the operation of a tow truck in transit. Instead, the words "arising out of" should be construed in accordance with their common and ordinary meaning as referring to a claim "growing out of" or having its "origin in" the subject matter of the towing agreement. See Westchester Fire Ins. Co. v. Continental Ins. Cos., 126 N.J. Super. 29, 38, 312 A.2d 664 (App.Div. 1973), aff'd, 65 N.J. 152, 319 A.2d 732 (1974); Minkov v. Reliance Ins. Co., 54 N.J. Super. 509, 516, 149 A.2d 260 (App.Div. 1959). So interpreted, there need be shown only a substantial nexus between the property damage or injury alleged in the claim and the activities encompassed in the towing contract.
Applying these principles, we agree with the Law Division that the indemnification and defense clause applied to the Vitty claim. In reaching this conclusion, we acknowledge that Vitty's death resulted from a freak accident that perhaps could not have been envisioned by the parties. However, clearly an automobile accident involving a tow truck was a reasonably foreseeable event within the contemplation of the parties when they entered the towing agreement. Injury, death or property damage arising from an automobile accident involving a tow truck constituted an obvious risk encompassed in the activities which Garage was bound to perform. The parties agreed that this risk was to be borne by Garage, not NJHA. This was an integral part of the consideration of the contract. Although the accident resulting in Vitty's death occurred in a bizarre way, the simple and overriding fact remains that the decedent was performing the duties and responsibilities required by the contract. Stated another way, Vitty's death was occasioned by or arose out of the performance of his job-related responsibilities.
Our decision in this case is not contrary to that reached by another panel in McCabe v. Great Pac. Century Corp., 236 N.J. Super. 488, 566 A.2d 234 (App.Div. 1989), certif. denied, 121 N.J. 611, *454 583 A.2d 312 (1990). There, an electrical contracting company agreed to indemnify the general contractor respecting all claims "resulting from any act or omission of [the] [s]ubcontractor, or [c]ontractor ... related to the subject matter of [the] [s]ubcontract." Id. 236 N.J. Super. at 491-92, 566 A.2d 234. The claimant, an employee of the subcontractor, was injured when he was struck by a moving exterior elevator. Id. at 490, 566 A.2d 234. The Law Division granted summary judgment in favor of the contractor "without making any finding that [the contractor] or [subcontractor] had been negligent or that any negligence of [the contractor] related to the electrical work being performed by [the subcontractor]." Id. at 492, 566 A.2d 234. We reversed, noting that the Law Division's conclusion was inconsistent with the plain language of the indemnification clause. Ibid. Specifically, we said "[t]he prerequisite that the `act or omission,' of [the subcontractor] or [contractor] must be `related to the subject matter of [the] [s]ubcontract' [was] not directed at the conduct of the injured plaintiff but rather the conduct of the contractor on which liability [was] predicated." Ibid. We also noted that "`the subject matter of [the] subcontract' [clearly referred to the subcontractor's] electrical work rather than all the work under [the general contractor's] contract with the property owner." Ibid.
The indemnification agreement here is quite different. Unlike McCabe, it does not require that the claim pertain to an "act or omission resulting from" the towing agreement. The cause of the claim need not relate to an "act or omission" in carrying out the duties required by the license. Instead, all that is required is that the injury, or property damage grow out of, or have its origin in, or be connected to the subject matter of the towing agreement. Unlike the indemnification agreement in McCabe, which required that the injury or property damage encompassed in the claim result from an "act or omission" relating to the subject matter of the subcontract, Garage's obligation does not depend on causality. Thus, although the cause of Vitty's death was wholly unrelated to the subject matter of the towing agreement, the decedent was nonetheless performing his job related responsibilities when the *455 accident occurred. There was a sufficient nexus between the claim and the towing agreement to trigger the indemnification clause. The risk that an employee of the towing company would be injured while performing his job related responsibilities was reasonably foreseeable and was one that Garage agreed to assume.
Before leaving the subject, we note that other jurisdictions have wrestled with the problem of whether work-connected injuries of a subcontractor's employee fall within the purview of an indemnification agreement. The issue has received uneven treatment. Compare McClane v. Sun Oil Co., 634 F.2d 855 (5th Cir.1981) (contractor not liable to leaseholder under indemnity agreement where subcontractor's employees died in an explosion at work site while extending walkway to tank); Tatar v. Maxon Constr. Co., 3 Ill. App.3d 352, 277 N.E.2d 715 (1972) (subcontractor not liable under indemnification agreement where subcontractor's work involved grading and leveling around building and its employee, while engaged in such work, was hit by a falling beam from the building), aff'd, 54 Ill.2d 64, 294 N.E.2d 272 (1973) with George A. Fuller Co. v. Fischbach & Moore, Inc., 7 A.D.2d 33, 180 N.Y.S.2d 589 (1958) (subcontractor liable to general contractor under indemnification agreement where subcontractor contracted to perform electrical work and its employee, while engaged in such work, was injured by a collapsed ceiling unrelated to his work), appeal denied, 187 N.Y.S.2d 1025, 159 N.E.2d 355 (1959); Cirrito v. Turner Constr. Co., 189 Conn. 701, 458 A.2d 678 (1983) (subcontractor, who was employed to do plastering work, must indemnify general contractor for injuries sustained by employee of second subcontractor, who fell down stairs while leaving work); Smoke v. Turner Constr. Co., 54 F. Supp. 369 (D.Del. 1944) (contractor for the construction of a hospital stated a cause of action in seeking indemnification against subcontractor, employed to perform brick and masonry work, where subcontractor's employee, while working, was hit by a falling object); Graver Tank & Mfg. Co. v. Fluor Corp., 4 Ariz. App. 476, 421 P.2d 909, 912 (1966) (rejecting argument that indemnification language "sustained in connection with *456 or arising out of" connotes causality); De Tienne v. S.N. Nielsen Co., 45 Ill. App.2d 231, 195 N.E.2d 240 (1963) (under language calling for subcontractor to indemnify general contractor for claims "occasioned by ... the work," subcontractor liable to general contractor by virtue of subcontractor's employees being on the job). See also Maurice T. Brunner, Annotation, Liability of Subcontractor Upon Bond or Other Agreement Indemnifying General Contractor Against Liability for Damage to Person or Property, 68 A.L.R.3d 7 (1976) (discussing indemnification in relation to work of subcontractor). Obviously, resolution of the issue depends in large part upon the wording of the particular agreement and the nature of the risks assumed by the indemnitor. We conclude here that Garage's obligation did not depend on causality. Instead, the agreement merely required that the claim have some nexus or connection with the subject matter of the license. In our view, the fact that Vitty's death arose out of a work connected accident triggered Garage's obligation to defend and indemnify NJHA on the resulting claim.

III.
Garage next contends that Vitty's death was caused by the "sole active negligence" of NJHA. While acknowledging that Vicaro was, at the very least, a joint tortfeasor, Garage asserts that the word "sole" in the indemnification agreement was intended to refer only to the contracting parties. Stated somewhat differently, Garage argues that, as between NJHA and itself, only NJHA was negligent. Garage further claims that NJHA was guilty of "active" negligence because its defective design of the median occasioned the need to install a guardrail.
It is well-settled that a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms. Ramos v. Browning Ferris Indus., 103 N.J. at 191, 510 A.2d 1152; see also Carbone v. Cortlandt Realty Corp., 58 N.J. 366, 368, 277 A.2d 542 (1971); George M. Brewster & Son, Inc. v. *457 Catalytic Constr. Co., 17 N.J. at 32-33, 109 A.2d 805. As between two parties, the one who is at fault should ordinarily bear the consequences of its negligence. Cf. Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 566, 410 A.2d 674 (1980) (in the absence of a contractual understanding it would be inequitable to permit an active wrongdoer to obtain indemnity from another wrongdoer and thus escape any responsibility). Referring to this principle, Garage asserts that it should not be required under the agreement to indemnify NJHA because, as between the two, only NJHA was at fault. See Secallus v. Muscarelle, 245 N.J. Super. 535, 538, 586 A.2d 305, aff'd, 126 N.J. 288, 597 A.2d 1083 (1991); Grippo v. Schrenell and Co., 223 N.J. Super. 154, 164, 538 A.2d 404 (1988); N.J.S.A. 2A:40A-1.
While we agree that in the absence of an agreement to the contrary, an innocent party should not be required to indemnify another whose negligence has been the sole cause of an injury or damage, that principle does not apply here. The word "sole" in the indemnification agreement does not refer only to the contracting parties. We cannot ignore the plain meaning of the contractual language. Because Vicaro was, at the very least, a joint tortfeasor, it cannot fairly be said that Vitty's death was caused by the "sole active negligence" of NJHA.
Affirmed.