693 A.2d 1209

AGOSTINHO LEITAO AND ELIZABETH LEITAO, PLAINTIFFS–RESPONDENTS, v. DAMON G. DOUGLAS COMPANY, TORSIELLO COMPANY & SONS, INC., DEFENDANTS–RESPONDENTS, JOHN F. KENNEDY HOSPITAL, AND THE ABC COMPANY, DEFENDANTS.

DAMON G. DOUGLAS COMPANY, DEFENDANT–RESPONDENT/THIRD PARTY PLAINTIFF, v. S & J ELECTRICAL CONTRACTORS, THIRD–PARTY DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 7, 1997—Decided May 22, 1997.

Before BAIME, PAUL G. LEVY and BRAITHWAITE, JJ.

*Edward L. Thornton* argued the cause for appellant (*Methfessel & Werbel,* attorneys; *Mr. Thornton,* on the brief).

*Paul J. Soderman* argued the cause for respondent Damon G. Douglas Co. (*Zucker, Facher & Zucker,* attorneys; *Mr. Soderman,* on the brief).

The brief of respondents Agostinho Leitao and Elizabeth Leitao was suppressed.

The brief of respondent Torsiello Company & Sons, Inc. was suppressed.

The opinion of the court was delivered by

BAIME, J.A.D.

This appeal requires us to construe an indemnification clause in an agreement between a general contractor and a subcontractor. The clause requires the subcontractor to indemnify the contractor

for all claims caused in whole or in part by a negligent act of the subcontractor or its employees regardless of whether they also are caused in part by the contractor. An employee of the subcontractor was injured at the job site while engaged in his work duties and brought suit against the contractor. A jury found the contractor 51% negligent and the employee 49% negligent. The damage award was molded accordingly. Following entry of judgment, the Law Division granted the contractor's claim for contractual indemnity. The subcontractor appeals, contending that the Law Division misinterpreted the indemnification clause. We disagree and affirm the Law Division's judgment.

## I.

Agostinho Leitao was employed by S & J Electrical Contractors (S & J). S & J entered into an agreement with Damon G. Douglas Company (Douglas) to perform electrical work at a construction project owned by JFK Hospital. As part of the electrical work, S & J was to install sleeves which would permit wires and cables to pass through the floors of the building. While engaged in this task, Leitao tripped and fell on wire mesh that had been installed by the masonry subcontractor, Torsiello & Sons (Torsiello), in preparation for pouring the concrete floors. At trial, Leitao acknowledged that he was fully aware of the presence of the wire mesh, but was not paying attention when the accident occurred. As he fell, Leitao extended his left hand which struck the wire mesh, causing severe lacerations.

Leitao sued Douglas, Torsiello, and JFK Hospital. Douglas filed a third-party complaint against S & J, which was severed for the purpose of trial. JFK Hospital was granted summary judgment. The jury found no negligence on the part of Torsiello. As we noted, Douglas was found to be 51% negligent and Leitao 49% contributorily negligent. The damages award was molded and judgment entered. The Law Division found as a matter of law that the claim arose out of the performance of S & J's work and

was in part caused by Leitao's negligence, and it granted Douglas' claim for indemnification.

## II.

The contractual language at issue reads in pertinent part as follows:

> Indemnification Agreement—The subcontractor/vendor shall indemnify and hold harmless Damon G. Douglas Company and all of its agents and employees from and against all claims, damages, losses, and expenses, including attorney's fees arising out of or resulting from the performance of the subcontractor/vendor's work under this purchase order, provided that any such claim, damage, loss or expense a) is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than work itself), including the loss of use resulting therefrom, and b) is caused in whole or in part by any negligent act or omission of the subcontractor/vendor or anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether it is caused in part by a party indemnified hereunder.

> In any and all claims against Damon G. Douglas Company or any of its agents or employees by any employees of the subcontractor/vendor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under this Agreement shall not be limited in any way by any limitation on the amount or type of damages, compensation, or benefits payable by or for the subcontractor/vendor under workers' compensation acts, disability benefit acts, or other employee benefits acts.

The guiding principles in construing indemnification agreements are well-settled. Although such agreements are interpreted in accordance with the rules governing construction of contracts generally, *see Cozzi v. Owens Corning Fiber Glass Corp.*, 63 *N.J.Super.* 117, 121, 164 *A.*2d 69 (App.Div.1960); *Longi v. Raymond–Commerce Corp.*, 34 *N.J.Super.* 593, 603, 113 *A.*2d 69 (App.Div.1955), ambiguous clauses should be strictly construed against the indemnitee. *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 103 *N.J.* 177, 191, 510 *A.*2d 1152 (1986). A contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms. *George M. Brewster & Son, Inc. v. Catalytic Const. Co.*, 17 *N.J.* 20, 33, 109 *A.*2d 805 (1954). This general rule is fortified by *N.J.S.A.* 2A:40A–1 which specifies that an indemnification agreement in a construction contract purport-

ing to hold harmless the indemnitee for losses or damages resulting from its "sole negligence" is a violation of public policy. *Carvalho v. Toll Bros. and Developers*, 143 *N.J.* 565, 578, 675 *A.*2d 209 (1996); *see also N.J.S.A.* 2A:40A–2.

We hasten to add that "there is no essential public policy impediment to an indemnitor undertaking to indemnify the indemnitee in respect of the indemnitee's own negligence." *Doloughty v. Blanchard Const. Co.*, 139 *N.J.Super.* 110, 116, 352 *A.*2d 613 (Law Div.1976). Even in the context of an indemnity agreement in a construction contract, it is not against public policy for the indemnitor to promise to hold harmless the indemnitee for the indemnitee's own negligence as long as the indemnitee is not solely at fault. *See Carvalho v. Toll Bros. and Developers*, 143 *N.J.* at 578, 675 *A.*2d 209; *Bradford v. Kupper Assocs.*, 283 *N.J.Super.* 556, 584, 662 *A.*2d 1004 (App.Div.1995), *certif. denied*, 144 *N.J.* 586, 677 *A.*2d 759 (1996). This principle "derives from the judicial recognition that ordinarily the financial responsibility for the risk of injury during the course of a construction project is shifted in any event by the primary parties to their insurance carriers." *Doloughty v. Blanchard Const. Co.*, 139 *N.J.Super.* at 116, 352 *A.*2d 613. The impact of the indemnity agreement "is therefore, in practical effect, the parties' allocation between themselves of the total required insurance protection for the project." *Ibid.* The parties ought to be free to determine how the insurance burdens will be distributed between them and "who will pay for specific coverage for specific risks." *Ibid.*

The freedom to allocate risk for the ultimate responsibility for injuries on the job is predicated upon other policies as well. We note the plethora of suits by injured workers against the owners of premises and general contractors. As other jurisdictions have recognized, "[t]hose suits are brought in many instances as attempts to escape the limitations of work[ers'] compensation and are often encouraged by work[ers'] compensation carriers seeking subrogation recoveries." *Willey v. Minnesota Mining & Mfg. Co.*, 755 *F.*2d 315, 323 (3d Cir.1985); *see also Westinghouse Elec. Co. v.*

*Murphy, Inc.*, 425 *Pa.* 166, 173 n. 5, 228 *A.*2d 656, 660 n. 5 (Pa.1967). Exposure to such liability "explains why owners seek to have contractors and subcontractors bear the risk of insuring against claims by their own workers." *Willey v. Minnesota Mining & Mfg. Co.*, 755 *F.*2d at 323. Although agreements indemnifying the indemnitee for its own negligent acts are perhaps antithetical to the policy of compelling tortfeasors to bear responsibility for conduct heedless of the risks to others, the practical reality is that, through insurance or otherwise, allocation of financial responsibility is often part of the bargaining process. *See Jamison v. Ellwood Consol. Water Co.*, 420 *F.*2d 787, 789 (3d Cir.1970).

Against this backdrop, we first hold that Leitao's claim was one "arising out of or resulting from the performance of the subcontractor[ ]'s work," within the meaning of the indemnity clause. In similar contexts, we have construed the words "arising out of" in accordance with their common and ordinary meaning as referring to a claim "growing out of" or having its "origin in" the subject matter of the subcontractor's work duties. *See, e.g., The Pep Boys v. Cigna Indem. Ins. Co. of N. America*, 300 *N.J.Super.* 245, 251, 692 *A.*2d 546 (App.Div.1997); *Harrah's Atlantic City, Inc. v. Harleysville Ins. Co.*, 288 *N.J.Super.* 152, 157, 671 *A.*2d 1122 (App.Div.1996); *Vitty v. D.C.P. Corp.*, 268 *N.J.Super.* 447, 453, 633 *A.*2d 1040 (App.Div.1993); *cf. Franklin Mut. Ins. v. Security Indem. Ins. Co.*, 275 *N.J.Super.* 335, 340, 646 *A.*2d 443 (App.Div.) (involving insurance liability coverage), *certif. denied*, 139 *N.J.* 185, 652 *A.*2d 173 (1994). Although the words "resulting from" perhaps imply some causal relationship between the subcontractor's work and the claim, we do not interpret this clause as requiring fault on the subcontractor's part as a prerequisite to indemnification. Instead, we view these words as requiring only a substantial nexus between the claim and the subject matter of the subcontractor's work duties. *Cf. Harrah's Atlantic City, Inc. v. Harleysville Ins. Co.*, 288 *N.J.Super.* at 158, 671 *A.*2d 1122;

*Franklin Mut. Ins. v. Security Indem. Inc.*, 275 *N.J.Super.* at 340–41, 646 *A.*2d 443.

So posited, we are in complete accord with the Law Division's conclusion that Leitao's claim arose out of or resulted from the performance of the subcontractor's work. When injured, Leitao was in the process of performing the very work S & J had agreed to complete. It was not Leitao's mere status as an employee of the indemnitor that triggered the duty to indemnify. Rather, Leitao's claim arose out of his performance of work duties required by the subcontract.

S & J's reliance on *McCabe v. Great Pacific Century Corp.*, 236 *N.J.Super.* 488, 566 *A.*2d 234 (App.Div.1989), *certif. denied*, 121 *N.J.* 611, 583 *A.*2d 312 (1990) is clearly misplaced. There, an electrical contracting company agreed to indemnify the general contractor respecting all claims "resulting from any act or omission of [the][s]ubcontractor, or [c]ontractor, . . . related to the subject matter of [the][s]ubcontract." *Id.* at 491–92, 566 *A.*2d 234. The claimant, an employee of the subcontractor, was injured when he was struck by a moving exterior elevator. *Id.* at 490, 566 *A.*2d 234. The Law Division granted summary judgment in favor of the contractor "without making any finding that [the contractor] or [subcontractor] had been negligent" or that any negligence "related to the electrical work being performed by" the subcontractor. *Id.* at 492, 566 *A.*2d 234. We reversed, noting that the Law Division's conclusion was inconsistent with the plain language of the indemnity agreement. *Ibid.* Specifically, we said "[t]he prerequisite that the 'act or omission' of [the subcontractor] or [contractor] must be 'related to the subject matter of [the][s]ubcontract' [was] not directed at the conduct of the injured plaintiff but rather the conduct of the contractor on which liability [was] predicated." *Ibid.* We also noted that "the subject matter of [the] subcontract [clearly referred to the subcontractor's] electrical work rather than all the work under [the general contractor's] contract with the property owner." *Ibid.*

Unlike *McCabe*, the indemnity clause here does not require that the claim arise out of "any act or omission of [the][s]ubcontractor,

or [c]ontractor," pertaining to the subject matter of the subcontract. *Id.* at 491–92, 566 *A.*2d 234. The contractual language in this case is much broader than that reviewed in *McCabe,* as it merely requires that the claim arise out of or result from the performance of the subcontractor's work. Leitao was injured while in the very course and act of performing the subcontracted work, and his claim plainly fell within the indemnity clause.

We also conclude that Leitao's injury was not caused by the "sole negligence" of Douglas, as S & J claims. Stripped to its essentials, the indemnity clause requires S & J to hold Douglas harmless for any claim "attributable to bodily injury . . . caused in whole or in part by any negligent act or omission of the subcontractor . . . *or anyone directly or indirectly employed by [it], . . . regardless of whether it is caused in part by a party indemnified . . . .*" (Emphasis added). Clearly, the jury's finding that Leitao was contributorily negligent indicates that his claim was encompassed within the underscored contractual language. By its plain terms, the indemnification clause is to be effective where the underlying claim is caused by any negligent act or omission by anyone directly or indirectly employed by the subcontractor, "regardless of whether it is caused in part by a party indemnified."

We reject S & J's argument that indemnification as to a verdict molded to reduce the amount recoverable by Leitao's contributory negligence allows the indemnitee, Douglas, to be held harmless for its "sole negligence," contrary to the contractual language and the public policy enunciated in *N.J.S.A.* 2A:40A–1. S & J contends that since Leitao's recovery was reduced by the percentage of his contributory fault, the damages that Douglas had to pay were attributable to its sole negligence. It is thus argued that, under the contractual language and *N.J.S.A.* 2A:40A–1, S & J may not be compelled to indemnify Douglas for damages caused by its sole negligence.

We have found no reported New Jersey opinion dealing with the precise issue raised. Other jurisdictions that have considered the

question have generally permitted indemnification in this situation. In *Eastern Airlines v. Insurance Co. of North America,* 758 *F.*2d 132 (3d Cir.1985), the indemnitor, the injured plaintiff's employer, claimed that since the employee's recovery was reduced by the 20% contributory negligence reflected in the jury's verdict, the recoverable damages against the indemnitee were attributable to its "sole negligence." *Id.* at 134. The Court of Appeals for the Third Circuit held that the "sole negligence" prohibition did not operate to bar indemnification for injuries found to have been partially caused by the employee's own negligence, even where the indemnitor, the plaintiff's employer, was found not to be at fault. *Id.* at 135. In reaching this conclusion, the court emphasized that the indemnification obligation was not limited to "damages paid" solely as the result of the indemnitee's negligence. *Id.* at 134.

The Massachusetts Court of Appeals reached the same conclusion in *Collins v. Kiewit Construction Co.,* 40 *Mass.App.Ct.* 796, 667 *N.E.*2d 904 (1996). There, Collins, an employee of the indemnitor, was injured at the work site while performing his duties. *Id.* at 796, 667 *N.E.*2d at 905. Collins sued Kiewit, the general contractor. *Ibid.* The jury found Kiewit 97% negligent and Collins 3% negligent. *Id.* at 797, 667 *N.E.*2d at 905. Kiewit sought indemnification against Collins' employer for the amount of the molded verdict under an indemnity clause contained in the subcontract. *Id.* at 796–97, 667 *N.E.*2d at 905. The indemnitor claimed that a Massachusetts statute which prohibited indemnification for the indemnitee's sole negligence barred Kiewit from enforcing the indemnity agreement. *Id.* at 797, 667 *N.E.*2d at 905. The court rejected this argument, noting that the "current statute [did] not preclude full indemnification when an indivisible injury is caused by negligence concurrently attributable to the indemnitee, and, by the terms of the indemnity agreement, to the indemnitor." *Id.* at 799, 667 *N.E.*2d at 906–07. In reaching this conclusion, the court reasoned that "[i]f the Legislature had intended that indemnification provisions in construction contracts be interpreted to reflect the application of our comparative negligence statute, or to pre-

clude indemnification when the injured claimant is an employee of the subcontractor, it could have said so." *Id.* at 800, 667 *N.E.*2d at 907.

Although several jurisdictions have disagreed with this approach, *see, e.g., Troxler v. Owens–Illinois, Inc.,* 717 *F.*2d 530, 536–37 (11th Cir.1983); *Drewery v. Daspit Bros. Marine Divers, Inc.,* 317 *F.*2d 425, 428 (5th Cir.1963); *Binswanger Glass Co. v. Beers Constr. Co.,* 141 *Ga.App.* 715, 718, 234 *S.E.*2d 363, 366 (1977), a strong majority has held that the injured employee's own negligence, which reduces his recovery to the amount of the molded verdict, does not impair the indemnification obligation owed by the employer indemnitor. *See, e.g., Bainville v. Hess Oil V.I. Corp.,* 837 *F.*2d 128, 134 (3d Cir.1988); *Burdo v. Ford Motor Co.,* 828 *F.*2d 380, 383–84 (6th Cir.1987); *W.M. Schlosser Co. v. Maryland Drywall Co.,* 673 *A.*2d 647, 653 (D.C.1996); *Stafford Enters., Inc. v. American Cyanamid Co.,* 164 *Ga.App.* 646, 649, 297 *S.E.*2d 307, 310–311 (1982); *Kelly v. Dimeo, Inc.,* 31 *Mass. App.Ct.* 626, 629–30, 581 *N.E.*2d 1316, 1318–19 (1991), *review denied,* 412 *Mass.* 1102, 588 *N.E.*2d 691 (1992); *Paquin v. Harnischfeger Corp.,* 113 *Mich.App.* 43, 53, 317 *N.W.*2d 279, 284 (1982); *Buchanan v. Rentenbach Constructors, Inc.,* 922 *S.W.*2d 467, 470 (Mo.Ct.App.1996); *Westinghouse Elec. Co. v. Murphy, Inc.,* 425 *Pa.* 166, 173–74 & n. 5, 228 *A.*2d 656, 660 & n. 5 (1967). We are satisfied that the contractual language impels that result here. The agreement does not call for indemnification limited to the share of damages caused by the employee's negligence or that of his employer. No fair reading of the indemnity provision may result in a limitation of the hold harmless obligation to claims or damages resulting from the indemnitor's fault or that of its employee. *See Mautz v. J.P. Patti Co.,* 298 *N.J.Super.* 13, 21, 688 *A.*2d 1088 (App.Div.1997).

The legislative history pertaining to *N.J.S.A.* 2A:40A–1 compels the same conclusion. As originally enacted, *N.J.S.A.* 2A:40A–1 barred all indemnification agreements in construction contracts. *L.* 1981, *c.* 317, § 1. The statute was amended in 1983 and in its present form bars only such hold harmless clauses in construction

contracts which indemnify the indemnitee for the indemnitee's sole negligence. *L.* 1983,. *c.* 107. As noted in the Statement of the Assembly Judiciary, Law, Public Safety and Defense Committee, one of the principal purposes of the amendment was to "allow indemnification clauses where contributory negligence is involved." The available evidence thus indicates that the Legislature intended to permit hold harmless clauses in construction contracts allowing a property owner or general contractor to obtain indemnification from a subcontractor when sued by an employee of the subcontractor whose injuries are caused in part by his contributory negligence.

Affirmed.