790 A.2d 956 (2002)
347 N.J. Super. 516
Mary AZURAK, Plaintiff,
v.
CORPORATE PROPERTY INVESTORS, t/a Ocean County Mall, Defendant-Respondent, and
Planned Building Services, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 14, 2001.
Decided February 7, 2002.
*957 Theresa E. Mullen argued the cause for appellant (Sachs, Maitlin, Fleming, Greene, Wilson & Marotte, attorneys; Ms. Mullen, on the brief).
Lawrence M. Berkeley, Livingston, argued the cause for respondent (Rubin & Fiorella, attorneys; Mr. Berkeley, on the brief).
Before Judges SKILLMAN, CARCHMAN and WELLS.
The opinion of the court was delivered by CARCHMAN, J.A.D.
In a pre-trial motion, the motion judge determined that defendant Planned Building Services (PBS) was required to indemnify defendant Corporate Property Investors (the Mall) for damages arising from the Mall's negligence as well as pay all defense costs. We conclude that the Mall is not entitled to indemnification for its own negligence under its indemnification provision absent "explicit contractual language" required by Mantilla v. NC Mall Assocs., 167 N.J. 262, 770 A.2d 1144 (2001). Accordingly, we reverse.

I.
These are the relevant facts. Plaintiff Mary Azurak was injured when she slipped on a "cheese-type substance" and fell while shopping at the Mall. Plaintiff brought an action in the Law Division and, after relevant amendments, the issue was joined with both the Mall and PBS named as party-defendants. At the time of the incident, the Mall had contracted with PBS for the latter to provide janitorial services to the Mall. The contract contained the following provision:
Contractor [PBS] shall indemnify, defend and hold harmless each Indemnitee [the Mall] from and against any claim (including any claim brought by employees of Contractor), liability, damage or expense (including attorney's fees) that such Indemnitee may incur relating to, arising out of or existing by reason of (i) Contractor's performance of this Agreement or the conditions created thereby (including the use, misuse or failure of any equipment used by Contractor *958 or its subcontractors, servants or employees) or (ii) Contractor's breach of this Agreement or the inadequate or improper performance of this Agreement by Contractor or its subcontractors, servants or employees.
Relying on the pleadings and pre-trial discovery, the motion judge granted the Mall's motion for summary judgment seeking indemnification and defense costs. The judge concluded
as a matter of law that the indemnity provision is to be construed in accordance with the rules for the construction of contracts and, hence, the judicial task here is to ascertain the intention of the parties by reading the language, the surrounding circumstances, and the object sought to be obtained under the agreement.... [P]ursuant to Vitty v. [D.C.P. Corp., 268 N.J.Super. 447, 633 A.2d 1040 (App.Div.1993) ] the cause of the claim may not be related to an act or omission in carrying out the duties required by the license and instead all that is required is that the injury or property damage grow out of or have its origins or be connected to the subject matter. And in construing the indemnity agreement doubt is required to be resolved in favor of the indemnitee.
In the case at hand, the slip and fall on the product on the floor in the common area where the plaintiff was allegedly injured grew out of, had its origin, or was in connection with the subject matter of the contract and the indemnification clause. Discovery need not disclose any other claims of negligence against CPI [the Mall] and the indemnification clause is applicable as in this case and the discovery will be the fall arose out of the duty to clean and maintain the floor. Motion is hereby granted.

[citations omitted.]
After ordering indemnification and a defense, the judge then certified the judgment as final and PBS appealed.[1] While this appeal was pending, plaintiff's cause of action was tried resulting in a judgment against the Mall and PBS. Negligence was found as against all partiesplaintiff 30%; the Mall-30%; and PBS-40%and the jury awarded plaintiff $7,600.16, which was then molded to reflect plaintiff's comparative negligence. After computation of prejudgment interest, a judgment was entered in plaintiff's favor for $6,131.02.

II.
Subsequent to the filing of this appeal, the Supreme Court decided Mantilla. In Mantilla, the Court revisited the issue of interpretation of indemnification agreements and held "absent explicit contractual language to the contrary, an indemnitee who has defended against allegations of its own independent fault may not recover the costs of its defense from an indemnitor." 167 N.J. at 275, 770 A.2d 1144. The Court was confronted with two apparently conflicting indemnification provisionsone which appeared to require indemnification for the indemnitee's negligence and the other which did not. Observing that indemnity provisions are to construed in accordance with the rules for construction of contracts generally, id. at 272, 770 A.2d 1144, the Court restated a "bright-line" rule, which had been enunciated in other indemnification contexts, that "a contract will not be construed to indemnify the indemnitee against losses resulting from *959 its own negligence unless such an intention is expressed in unequivocal terms." Id. at 272-73, 770 A.2d 1144 (quoting Ramos v. Browning Ferris Indus. of S. Jersey, Inc., 103 N.J. 177, 191, 510 A.2d 1152 (1986) (applying the principle in construing an indemnity contract in the context of a workers' compensation case)).
The Mall relies on the "broad" versus "limited" form indemnification analysis enunciated in Doloughty v. Blanchard Constr. Co., 139 N.J.Super. 110, 117, 352 A.2d 613 (Law Div.1976). In Doloughty, the judge said:
An analysis of recent case law, both in this and other jurisdictions, indicates that indemnity provisions in construction contracts are generally of one of two types. The first of these is a broad undertaking by an indemnitor to indemnify the indemnitee in respect of any damage or injury which occurs during or in connection with or as a result of the indemnitor's performance of the contracted work. Such undertakings are usually construed, consistent with what appears to be the intent of the parties, as imposing the exclusive obligation upon the indemnitor both to defend and to respond in damages irrespective of fault and irrespective of the absence of an express undertaking to indemnify the indemnitee for its own negligence.

[Id. at 117, 352 A.2d 613 (emphasis added).]
The contractual language in Doloughty, a construction case, referred to claims "arising out of the performance" of the work. Id. at 119, 352 A.2d 613. The judge identified the contrasting type of indemnity provision as "one which is limited to risk of loss or damage resulting from the negligence or fault of the indemnitor." Id. at 118, 352 A.2d 613. Contractual language used to express this "limited" type of indemnity includes "a specific reference to the indemnitor's fault or negligence, ... [or language such as] arising from the indemnitor's `acts or omissions.'" Ibid. The judge then concluded that a court must determine:
[W]hether or not, considering all of the relational circumstances, the indemnitee reasonably expected as part of his bargain with the indemnitor that the duty he failed to perform and on which his liability to plaintiff is predicated would be performed by the indemnitor. Then, of course, as between themselves, the indemnitee should be relieved of responsibility for his breach of duty vis-a-vis plaintiff since the indemnitor's obligation to indemnify in that situation would clearly have been within the parties' contemplated bargain. If, on the other hand, the duty to plaintiff breached by the indemnitee was not originally or independently that of the indemnitor and was not otherwise shifted to him by the relational circumstances between them, or if the indemnitee's expectation of the indemnitor's performance of that duty was not otherwise reasonable, the indemnitee's liability to plaintiff cannot be fairly deemed to have been within the intended coverage of an indemnity agreement limited to the indemnitor's acts or omissions.

[Id. at 122-23, 352 A.2d 613.]
Subsequent to the decision in Doloughty, the Supreme Court enunciated basic principles in the construction of indemnification provisions by holding:
Indemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally. When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee. Thus, a contract will not be construed to indemnify the indemnitee against losses resulting from its own *960 negligence unless such an intention is expressed in unequivocal terms.

[Ramos v. Browning Ferris Indus. of S. Jersey, Inc., 103 N.J. 177, 191, 510 A.2d 1152 (1986) (emphasis added) (citations omitted).]
We have construed Ramos as a modification of Doloughty and in Gulf Oil Corp. v. ACF Indus., Inc., 221 N.J.Super. 420, 428-29, 534 A.2d 1025 (App.Div.1987), certif. denied, 111 N.J. 613, 546 A.2d 532 (1988), observed:
Although Ramos was determined in a different setting, the principle just quoted [i.e., see emphasized language above] must be deemed to modify the Doloughty formula which requires that only a broad indemnification for all work-related adverse consequences need be shown for the indemnitor to provide indemnification for the indemnitee's own negligence. Under Ramos and the several cases there cited, there must be language unequivocally including the indemnitee's negligence. We accept for the purpose of this discussion that there need not be any specific mention of the indemnitee's negligence in the contract; sufficient other all-encompassing language [i.e. broad form language] ... and the contractual setting should be able to constitute such an expression in the "unequivocal terms" required by Ramos.

We have adhered to the Ramos principle in subsequent analysis of indemnification agreements. See, e.g., Meder v. Resorts Int'l Hotel, Inc., 240 N.J.Super. 470, 478-79, 573 A.2d 922 (App.Div.1989), certif. denied, 121 N.J. 608, 583 A.2d 310 (1990) (applying the Ramos formulation where the contract did not state in "unequivocal terms" that the duty to indemnify extended to the indemnitee's negligence); McCabe v. Great Pac. Century Corp., 236 N.J.Super. 488, 492-93, 566 A.2d 234 (App. Div.1989), certif. denied, 121 N.J. 611-12, 583 A.2d 312 (1990) (same).
Our more recent analysis of the scope of indemnification provisions as applied to an indemnitee's negligence applies these two basis principles: indemnification provisions will be construed in accordance with general rules for construction of contracts, and no indemnification for a party's own negligence will be found absent an unequivocal expression of an intention to so indemnify. See, e.g., Pepe v. Township of Plainsboro, 337 N.J.Super. 209, 766 A.2d 837 (App.Div.2001) (finding that the language "any injury ... on account of any act of omission or commission of any contractor" did not provide indemnification for an agent of indemnitee); Leitao v. Damon G. Douglas Co., 301 N.J.Super. 187, 693 A.2d 1209 (App.Div.), certif. denied, 151 N.J. 466, 700 A.2d 879 (1997) (finding indemnification where the indemnification provision provided for indemnification for injury caused by "anyone directly or indirectly employed by [it], ... regardless of whether it is caused in part by a party indemnified...."); Mautz v. J.P. Patti Co., 298 N.J.Super. 13, 688 A.2d 1088 (App.Div.), certif. denied, 151 N.J. 472, 700 A.2d 883 (1997) (finding the language "arising out of or resulting from the performance of the [indemnitor's] work ... to the extent caused ... by any negligent act or omission of the [indemnitor]" did not require indemnification); Vitty v. D.C.P. Corp., 268 N.J.Super. 447, 633 A.2d 1040 (App.Div.1993) (finding that language precluding indemnification where the "sole active negligence" of the indemnitee caused the loss did not preclude indemnification for losses arising out of the underlying contract).
We apply these principles here and restate the language of the indemnification provision:
Contractor [PBS] shall indemnify, defend and hold harmless each Indemnitee *961 [the Mall] from and against any claim (including any claim brought by employees of Contractor), liability, damage or expense (including attorney's fees) that such Indemnitee may incur relating to, arising out of or existing by reason of (i) Contractor's performance of this Agreement or the conditions created thereby (including the use, misuse or failure of any equipment used by Contractor or its subcontractors, servants or employees) or (ii) Contractor's breach of this Agreement or the inadequate or improper performance of this Agreement by Contractor or its subcontractors, servants or employees.

[emphasis added.]
The focus of the provision is on the conduct of "the Contractor" with no reference to either the indemnitee or its negligence. The language of this indemnification provision does not meet the "unequivocal" or "explicit" test enunciated in Ramos and restated in Mantilla. We conclude that the indemnification agreement does not provide for indemnification of the Mall.
We recognize that other panels of this court have reached conflicting results in the interpretation of this indemnification provision. See Mercer v. Corporate Property Investors, No. A-1888-99T1 (App. Div. April 6, 2001) (relying on Doloughty and concluding that the indemnification provision applied to the Mall's negligence); Dafeldecker v. Ocean County Mall, No. A-6366-98T1 (App.Div. November 13, 2000) (same); but see Cicoski v. Corporate Prop. Invest., No. 4495-97T3 (App. Div. April 29, 1999) (holding that "[t]he clause would not require PBS to indemnify Corporate Property against liability for its own negligence"). Although these opinions are unpublished, the Mall argues that they are binding on PBS under the doctrine of collateral estoppel. See R. 1:36-3; Mantilla, supra, 167 N.J. at 267-68 n. 1, 770 A.2d 1144. However, these cases contain conflicting suggestions as to the proper interpretation of the indemnification clause in issue and, in any event, application of the collateral estoppel doctrine is discretionary and "must be applied equitably, not mechanically." Pivnick v. Beck, 326 N.J.Super. 474, 485, 741 A.2d 655 (App.Div.1999) aff'd o.b., 165 N.J. 670, 762 A.2d 653 (2000) (quoting In re Tanelli, 194 N.J.Super. 492, 497, 477 A.2d 394 (App.Div.), certif. denied, 99 N.J. 181, 491 A.2d 686 (1984)); see also Barker v. Brinegar, 346 N.J.Super. 558, 567, 788 A.2d 834 (App.Div.2002).
As we have stated, we reject the Mall's argument and reliance on Doloughty and conclude that the Court's analysis in Ramos and the reaffirmation of the Ramos principle in Mantilla compels the conclusion that absent the required language mandated by those cases, the indemnification provision does not extend to the Mall's negligence.
Significantly, the Court's analysis in Mantilla, by omission, eschewed the consideration of a "broad" or "limited" form of indemnificationa critical element in the analytical framework that had dominated consideration of these issues in Doloughty. We read Mantilla as a reiteration of Ramos and its "bright line" rule requiring "explicit language" that indemnification and defense shall include the indemnitee's own negligence. We note that nowhere in Mantilla is there any mention of the significance of broad form or limited form indemnification provisions or any significant reference to Doloughty.
The Ramos and Mantilla rule imposes no significant burden on contracting parties to express in "explicit terms" that the indemnification includes the negligence of the indemnitee. The parties need only draft contracts to reflect this intention in a manner consistent with the Court's dictates.
*962 In sum, we accept the Court's clear and explicit language as meaning what it says and conclude that the absence of clear and explicit language addressing indemnification for the Mall's negligence precludes recovery for its portion of the judgment or defense costs.
Reversed.
NOTES
[1] PBS acknowledged at oral agrument that the certification of the judgment was in error. We nevertheless treat the appeal as a motion for leave to appeal, grant the application nunc pro tunc and address the issues on the merits. See Taylor v. General Elec. Co., 208 N.J.Super. 207, 211, 505 A.2d 190 (App.Div.), certif. denied, 104 N.J. 379, 517 A.2d 388 (1986).