**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2835-23

ROBERT RUSSO and JOYCE
RUSSO,

      Plaintiffs-Respondents,

v.

O.A. PETERSON CONSTRUCTION
COMPANY, and MIKE, as employee
representative of O.A PETERSON
CONSTRUCTION i/j/s/a,

      Defendants-Appellants,

and

O.A. PETERSON CONSTRUCTION
COMPANY,

      Defendant/Third-Party
      Plaintiff-Appellant,

and

DYNAMIC PROTECTION SYSTEM,

      Third-Party Defendant-
      Respondent.

_____

Argued April 29, 2025 – Decided August 21, 2025

Before Judges Firko, Bishop-Thompson, and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-2349-21.

Anand Dash argued the cause for appellant (Kennedys CMK LLP, attorneys; Anand Dash, of counsel and on the briefs; Dylan M. Greenspan and Benjamin Weisbrot, on the briefs).

Quinn M. McCusker argued the cause for respondent Dynamic Protection System (Fowler Hirtzel McNulty & Spaulding, LLP, attorneys; Quinn M. McCusker, on the brief).

PER CURIAM

In this personal injury action, the jury awarded $909,547 in damages to plaintiffs Robert and Joyce Russo[1] for injuries sustained by Robert at a construction worksite, finding defendant and third-party plaintiff O.A. Peterson Construction (Peterson) 100% liable. Peterson appeals from four orders: (1) the April 15, 2024 order entering judgment in plaintiffs' favor; (2) the January 5, 2024 order denying Peterson's motion for reconsideration of the October 20, 2023 order; (3) the October 20, 2023 order denying Peterson's motion for

---

[1] We refer to the plaintiffs by their first name because they share a common last name. No disrespect is intended.

summary judgment; and (4) the October 20, 2023 order granting Dynamic Protection System's (DPS) cross-motion for summary judgment related to the indemnification for DPS's own negligence.  Having considered the record and applicable law, we affirm the four orders.

I.

We discern the relevant record from the motion and trial court record. Peterson is engaged in the business of construction management and general construction.  Peterson and DPS entered into a subcontractor agreement for the installation of a fire alarm system on a construction project in Bridgewater. Relevant to this appeal, the indemnity provision is set forth in paragraph M of the subcontractor agreement and provides:

> To the fullest extent permitted by law the Subcontractor shall indemnify and hold harmless the Contractor and its consultants, agents and employees or any of them from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death sustained by anyone, including employees of Subcontractor, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, caused in whole or part by negligent acts or omissions of the Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damages, loss

A-2835-23

or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist between Contractor and Subcontractor.

In November 2020, Robert was employed as a senior fire alarm technician by DPS on the Bridgewater construction project. According to Robert, Peterson's Site Superintendent, Mike O'Donnell, had opened the floor hatch to confirm the existence of a crawl space. Robert testified that while examining overhead wires, he stepped backward into the open hatch, resulting in injuries. At that time, both Robert and O'Donnell were looking up toward the ceiling. According to Robert, O'Donnell apologized after he fell into the open hatch.

Ed Prescott, Robert's supervisor, corroborated Robert's testimony during both his deposition and at trial. Prescott observed O'Donnell shut off the light inside the crawl space and assumed that he had closed the hatch. According to Prescott, DPS did not intend to access the hatch or the crawl space that day.

O'Donnell acknowledged that he was the site superintendent and was responsible for supervising Robert and Prescott on the day of the accident. He also acknowledged that he was responsible for the general safety conditions, which included safe premises for the subcontractors.

A-2835-23

O'Donnell testified that he could not recall who opened the hatch. He testified that the hatch should have been closed when unattended. O'Donnell further testified that he was unaware that the hatch was open when Robert stepped into the opening.

In November 2021, plaintiffs filed a complaint against Peterson and O'Donnell, asserting negligence and per quod claims. Peterson's liability carrier tendered the defense of the underlying lawsuit to DPS's insurance carrier and sought indemnification pursuant to the terms of the subcontractor's agreement; however, DPS's insurance carrier rejected the demand for indemnification. Peterson answered plaintiffs' complaint and asserted crossclaims for contribution and indemnification. Peterson subsequently amended its answer and filed a third-party complaint against DPS, seeking contribution, indemnification, and liability insurance coverage.

After the close of discovery, Peterson moved for summary judgment premised on the indemnification provision specified in paragraph M. DPS opposed the motion and cross-moved for dismissal of Peterson's third-party complaint in its entirety. Peterson did not oppose DPS's cross-motion for dismissal of the complaint. Instead, its opposition was limited to the issue of contractual indemnification.

A-2835-23

In an oral decision rendered on October 20, 2023, the motion judge denied Peterson's motion for summary judgment. Relying on Azurak v. Corp. Prop. Invs., the judge explained the "bright-line" language that the subcontractor shall indemnify the general contractor for claims arising out of the general contractor's own independent negligence was missing from the indemnification agreement. 175 N.J. 110, 112 (2003). The motion judge, however, partially granted DPS's motion on the limited issue of contractual indemnification for the "subcontractor's own negligence."

Peterson moved for reconsideration and advanced three arguments. The motion judge failed to provide or state on the record the two competing interpretations of the clause. The motion judge failed to interpret the subcontract by giving its terms their plain and ordinary meaning. Lastly, the language of the indemnification clause in Englert v. The Home Depot, 389 N.J. Super. 44 (2006) was distinguishable from the clause in this case. Peterson contended that on the other hand, the indemnification clauses in Leitao v. Damon G. Douglas Co., 301 N.J. Super. 187 (App. Div. 1997) and related cases—which the courts held to be unambiguous—were more analogous to the indemnification clause at issue in the present action.

A-2835-23

DPS also sought reconsideration of the October 20, 2023 order: (1) limiting the ruling solely to the issue of contractual indemnification; (2) correcting the clerical error—the provision of the order stating "subcontract's own negligence" instead of Peterson's own negligence; and (3) dismissing the third-party complaint in its entirety. Later, DPS moved to sever the third-party contractual indemnification claim from Robert's personal injury trial.

Following oral argument on the parties' motions for reconsideration, on January 5, 2024, the motion judge denied Peterson's motion for reconsideration relying on Englert. The motion judge granted DPS's motion to correct the clerical error with Peterson's consent.

In regard to DPS's motion for reconsideration, the motion court permitted Peterson's counsel to argue in opposition to the motion even though no opposition had been filed. The motion judge ultimately dismissed DPS from the litigation, which rendered moot DPS's motion to sever the third-party contractual indemnification claim from the trial.

Following a seven-day trial, a jury returned a verdict finding Peterson 100% liable for Robert's injuries. This appeal followed.

A-2835-23

Peterson challenges the motion order and the jury verdict. Peterson argues that the motion judge erred in denying its motion for reconsideration of the order denying summary judgment. It contends the motion judge erroneously concluded that the subcontract argument was ambiguous. Peterson argues, for the first time on appeal, that the motion judge erred in dismissing DPS from the litigation, thereby depriving the jury of the opportunity to assess DPS's comparative fault.

We review a trial court's grant of summary judgment de novo, applying the same standard as the trial court. Thomas Makuch, LLC v. Twp. of Jackson, 476 N.J. Super. 169, 184 (App. Div. 2023) (citing Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021)). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch, 244 N.J. at 582 (quoting R. 4:46-2(c)).

At the center of this appeal is the matter of contract interpretation; specifically, whether the indemnification provision is clear and unambiguous.

Thus, our analysis begins with general contract principles. In doing so, "contract interpretation is a question of law we review de novo, we 'pay no special deference to the trial court's interpretation and look at the contract with fresh eyes.'" Del. River Joint Toll Bridge Comm'n v. George Harms Constr. Co., Inc., 258 N.J. 286, 303 (2024) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)). We do not defer to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

Generally, an indemnification agreement is interpreted in accordance with the rules governing the construction of contracts. Ramos v. Browning Ferris Indus. of S. Jersey, Inc., 103 N.J. 177, 191-92 (1986). "When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee." Id. at 191. Thus, "an ambiguous contractual indemnification provision must be construed against the indemnitee." Englert, 389 N.J. Super. at 57 (citing Ramos, 103 N.J. at 191). In other words, the court should not "rewrite a contract for the parties better than or different from the one they wrote for themselves." Kieffer, 205 N.J. at 223 (citing Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001)).

We are unpersuaded by Peterson's argument that the indemnification provision is unambiguous. "An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations." Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting Kaufman v. Provident Life & Cas. Ins. Co., 828 F. Supp. 275, 282 (D.N.J. 1992)).

Here, the relevant indemnity provision in the subcontractor agreement between Peterson and DPS turns on whether a loss is "caused in whole or in part by negligent acts or omissions of [DPS as] the Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable" for work under the subcontractor agreement. DPS's liability, however, is broadly applicable "regardless of whether or not such claim, damage[s], loss or expense is caused in part by a party indemnified hereunder."

Based on our de novo review of the record, and contrary to Peterson's contention, we hold that the indemnification provision is ambiguous. The language of the clause supports two distinct but reasonable interpretations: DPS will indemnify Peterson for DPS's negligence irrespective of Peterson's contributory negligence, or DPS will indemnify Peterson for Peterson's own negligence so long as it was not solely liable. Accordingly, the form

subcontractor agreement must be strictly construed against Peterson as the drafter.

In Point II of Peterson's merits brief, it challenges the "erroneous" and "premature" dismissal of DPS from the litigation. Peterson argues the motion judge failed to provide or state on the record the two competing interpretations of the clause and interpret the subcontract by giving its terms their plain and ordinary meaning. These contentions are not supported by the record.

We review a trial judge's decision on whether to grant or deny a motion for reconsideration for an abuse of discretion. JPC Merger Sub LLC v. Tricon Enters., Inc., 474 N.J. Super. 145, 160 (App. Div. 2022). The January 5, 2024 order under review is interlocutory, and therefore, Rule 4:42-2 governs the motion. Ibid. Under that Rule, "interlocutory orders 'shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice.'" Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021) (quoting R. 4:42-2). "[A] motion for reconsideration provides the court, and not the litigant, with an opportunity to take a second bite at the apple to correct errors inherent in a prior ruling." Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015). Even under Rule 4:42-2, reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court

or wishes to reargue a motion[.]" Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010).

Here, Peterson did not oppose DPS's motion to dismiss the third-party complaint. The record reveals that despite Peterson's procedural misstep, the motion judge considered its arguments. The record further reveals the judge reiterated the basis for the initial denial of Peterson's motion and guided by applicable law, analyzed both motions for reconsideration. The judge reasoned that Englert providing a stronger analysis than Azurak, Mantilla v. NC Mall Assocs., 167 N.J. 262 (2001), and Est. of D'Avila v. Hugo Neu Schnitzer E., 442 N.J. Super. 80 (App. Div. 2015), in finding dismissal was appropriate. Thus, we discern no error by the motion judge in denying Peterson's motion for reconsideration and granting DPS's motion for dismissal.

Lastly, Peterson argues, for the first time on appeal, that the motion judge erred in dismissing DPS from the litigation, thereby preventing the jury from assessing DPS's comparative negligence. We do not consider arguments raised for the first time on appeal, except to consider jurisdictional matters or matters which substantially implicate the public interest. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Given our holding, we decline to address this argument.

Any arguments not addressed here lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-2835-23