Louis CEVASCO and Diane
Cevasco, Plaintiffs,

v.

NATIONAL RAILROAD PASSENGER
CORP., et al., Defendants,

National Railroad Passenger Corp.,
Third–Party Plaintiff,

v.

T.C. Johnson Company, et al.,
Third–Party Defendants,

This Report and Recommendation also
applies to the following cases: 05 Civ.
7419, 06 Civ. 6195, 06 Civ. 6196, 06 Civ.
6956.

No. 04 Civ. 5760 (PAC)(GWG).

United States District Court,
S.D. New York.

March 23, 2009.

Ira Mark Maurer, Cahill, Goetsch & Maurer, P.C., White Plains, NY, Ira Dennis Navon, Brooklyn, NY, for Plaintiffs.

Melissa Shari Katz, Landman Corsi Ballaine & Ford PC, Scott Lawrence Haworth, William Dudley Newcomb, III, Sedgwick, Detert, Moran & Arnold, LLP, Joseph Dedonato, Morgan, Melhuish, Monaghan, Arviidson, Abrutyn & Lisowski, Margaret Marie Murphy, Shelowitz & Associates, PLLC, New York, NY, Dominic

Paul Bianco, Gallagher Walker Bianco& Plastaras, Mineola, NY, for Defendants.

William G. Ballaine, Ronald E. Joseph, Sophia Ree, Landman Corsi Ballaine & Ford PC, New York, NY, for Defendants/Third-Party Plaintiff.

William S. Matlin, Hoffman & Roth, LLP, New York, NY, for Third–Party Defendant Crescent Contracting, Inc.

Robert D. Ely, Melito & Adolfsen, P.C., New York, NY, for Third-Party Defendant Hatch Mott MacDonald.

Anthony F. Tagliagambe, Brian A. Kalman, London Fischer LLP, New York, NY, for Third–Party Defendants STV, Inc. and STV/HMK, a joint venture of STV, Inc. and Hatch Mott MacDonald.

Robert Joseph Walker, Gallagher Walker Bianco& Plastaras, Mineola, NY, for Defendants/Third-Party Defendants.

## ORDER ADOPTING R & R

PAUL A. CROTTY, District Judge:

The five consolidated actions in this matter involve personal injury lawsuits against Defendant and Third–Party Plaintiff National Railroad Passenger Corp. ("Amtrak"), resulting from an accident at a work project inside the East River Tunnel in New York City. The issue before the Court is Amtrak's dispute over indemnification provisions in its contracts with Third–Party Defendants Crescent Contracting ("Crescent"), STV, Inc. ("STV"), Hatch Mott MacDonald, Inc. ("HMM"), and STV/HMM, a joint venture of STV and HMM. Amtrak seeks indemnification from Crescent, STV, HMM, and STV/HMM for the personal injury lawsuits filed by the employees of the Third–Party Defendants. Amtrak moves for partial summary judgment on this issue and HMM cross-moves for summary judgment seeking dismissal of Amtrak's claims for indemnification.

The Court assumes the parties' familiarity with the underlying facts and the procedural history of the cases, also available in Magistrate Judge Gorenstein's Report and Recommendation ("R & R") at 404–20. In brief, Amtrak and the Third Party Defendants entered into contracts in 2001 and 2002 whereby Third Party Defendants would install interim dry fire standpipe systems inside the East River Tunnel and perform construction management services on the project (the "Standpipe Project"). (R & R 404–06.) The contracts included indemnification clauses protecting Amtrak from liability to the Third–Party Defendants' employees. (*Id.*) On July 9, 2004, an Amtrak employee lost control of a crane on a separate project approximately one mile away from the Standpipe Project. The crane moved toward the Standpipe Project and ultimately collided with trucks at the Standpipe Project worksite, injuring employees of the Third Party Defendants. (*Id.* 406–07.) The individual plaintiffs sued Amtrak for their injuries.

The Court referred the general pretrial matters in these cases to Magistrate Judge Gorenstein on May 27, 2005.[*] Amtrak filed its motions for partial summary judgment on February 5, 2008, and HMM cross-moved for summary judgment on March 12, 2008. Magistrate Judge Gorenstein issued his R & R on February 23, 2009, recommending that this Court grant Amtrak's motions and deny HMM's motions. The R & R provided ten days for written objections, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. The R & R specifically advised that if a party failed to

[*] These cases were originally assigned to District Court Judge Howell. The cases were reassigned to this Court on October 12, 2005.

file timely objections, that party "will not be permitted to raise any objections to the Report and Recommendation on appeal." (R & R 419–20.) No objections have been filed.

### DISCUSSION

"To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Wilds v. United Parcel Serv.*, 262 F.Supp.2d 163, 169 (S.D.N.Y.2003). Upon review and analysis, the Court finds no clear error and agrees with Magistrate Judge Gorenstein's determinations that:

1) The term "arising out of" within the indemnification provision of the Crescent and Amtrak contract covers the circumstances of the injuries in this case and the language obligates Crescent to defend and indemnify Amtrak against the personal injury claims.

2) The contract between STV/HMM and Amtrak unambiguously and without limitation states that it will indemnify and hold Amtrak harmless for any claims arising from injuries to STV/HMM employees, and Amtrak may enforce this provision against STV/HMM. The indemnification clause does not limit itself to services performed pursuant to the terms of the agreement.

3) HMM must indemnify Amtrak for Plaintiff Cevasco's claims because Cevasco was an agent of the joint venture of STV/HMM, and HMM is jointly responsible for STV/HMM's obligations under the contract.

4) Amtrak did not materially breach the contract by failing to inform STV/HMM of other projects in the tunnels because: A) the contract did not require such information; and B) the failure to inform STV/HMM did not substantially frustrate the purpose of the agreement.

Accordingly, the Court accepts and adopts the Report and Recommendation as its opinion. Amtrak's motions for partial summary judgment are GRANTED, and HMM's motions for summary judgment are DISMISSED. The Clerk of Court is directed to terminate the motions at Docket # 220 in 04 Civ. 5760; Docket # 133 in 05 Civ. 7419; Docket # 87 in 06 Civ. 6195; Docket # 91 in 06 Civ. 6196; Docket # 75 in 06 Civ. 6956; Docket # 248 in 04 Civ. 5760; and Docket # 158 in 05 Civ. 7419. The order of reference to Magistrate Judge Gorenstein is ongoing.

SO ORDERED.

### REPORT AND RECOMMENDATION

GABRIEL W. GORENSTEIN, United States Magistrate Judge.

In five consolidated actions, defendant and third-party plaintiff National Railroad Passenger Corp. ("Amtrak") moves for partial summary judgment against third-party defendants Crescent Contracting ("Crescent"), STV, Inc. ("STV"), Hatch Mott MacDonald, Inc. ("HMM"), and STV/HMM, a joint venture of HMM and STV ("STV/HMM"), based on contractual indemnification provisions.[1] HMM has cross-moved for summary judgment dismissing Amtrak's indemnification claims against it. For the reasons stated below, Amtrak's motion for partial summary

---

1. The five actions are: *Cevasco v. National Railroad Passenger Corp.*, 04 Civ. 5760; *Sood v. National Railroad Passenger Corp.*, 05 Civ. 7419; *Adornetti v. National Railroad Passenger Corp.*, 06 Civ. 6195; *Vitale v. National Railroad Passenger Corp.*, 06 Civ. 6196; and

*Gayle v. National Railroad Passenger Corp.*, 06 Civ. 6956. The five actions have been consolidated for pre-trial purposes under the docket number 04 Civ. 5760. All citations refer to this docket, unless otherwise noted.

judgment should be granted, and HMM's cross-motion should be denied.

## I. BACKGROUND

### A. Factual Background

On November 7, 2002, Amtrak entered into a contract with Crescent to install interim manual dry fire standpipe systems inside the East River Tunnel in New York City (the "Standpipe Project"). *See* Construction Contract ("Crescent Contract") (annexed as Ex. A to Declaration of Ronald E. Joseph in Support of Defendant/Third–Party Plaintiff's Motion for Summary Judgment ("Joseph Decl."), filed Feb. 5, 2008 (Docket # 221)), ¶ 1. Paragraph 68 of the Crescent Contract addressed indemnification, stating in relevant part:

**68.0 INDEMNIFICATION**

68.1 Contractor agrees to defend, indemnify and hold harmless Amtrak . . . irrespective of any negligence or fault on their part, from and against any and all losses and liabilities, penalties, fines, forfeitures, demands, claims, causes of action, suits, costs, and expenses incidental thereto (including costs of defense and attorneys' fees), which any or all of them may hereafter incur, be responsible for or pay as a result of injury or death of any person . . . arising out of or in any degree directly or indirectly caused by or resulting from materials, products or equipment supplied by, or from activities of, or Work performed by Contractor . . . .

68.2 Contractor shall be responsible for all damages and expenses on account of injuries (including death) to any of its employees, agents or subcontractors while on the premises of Amtrak and shall indemnify, defend, and hold Amtrak harmless from all claims or damage suits which may arise in consequence of such injuries.

Crescent Contract, General Provisions ("Crescent Contract Gen."), ¶ 68. The contract further provided that Crescent would be "solely responsible for providing a safe place for the performance of the Work," *id.* ¶ 61.1; that it would be "solely responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work," *id.*, and that it "shall take all precautions necessary for the safety of, and shall provide all protection necessary to prevent damage, injury or loss to . . . [a]ll employees involved in the Work," *id.* ¶ 61.2. It also stated that "Amtrak assumes no responsibility or liability for the physical condition or safety of the work site or any improvements located thereon." *Id.* ¶ 61.1.

On December 11, 2001, Amtrak entered into a contract with the joint venture STV/HMM to perform construction management services in relation to the Standpipe Project. *See* Services Contract (annexed as Ex. H to Joseph Decl.) ("STV/HMM Contract"). Paragraph 35 of the STV/HMM Contract addressed indemnification, stating in relevant part:

**35. INDEMNIFICATION**

A. Contractor agrees to defend, indemnify and hold harmless Amtrak . . . from and against any and all losses and liabilities, penalties, fines, forfeitures, demands, claims, causes of action, suits, costs and expenses incidental thereto, (including costs of defense and attorneys' fees), which any or all of them may hereafter incur, be responsible for or pay as a result of injury or death of any person . . . to the extent arising from the negligent acts, negligent omissions, or willful misconduct in the Services performed by Contractor . . . .

B. Contractor shall be responsible for all damages and expenses on account of injuries (including death) to any of its employees, agents or subcontractors

while on the premises of Amtrak and shall indemnify, defend, and hold Amtrak harmless from all claims or damage suits which may arise in consequence of such injuries irrespective of any negligence or fault of Amtrak. STV/HMM Contract, General Provisions ("STV/HMM Contract Gen."), ¶ 35. In a separate Joint Venture Agreement, dated the same day as the STV/HMM Contract with Amtrak, STV and HMM together created the joint venture STV/HMM, and agreed that they would be jointly and severally liable to Amtrak. *See* Joint Venture Agreement (annexed as Ex. I to Joseph Decl.), ¶¶ 2.1, 15.1.

On the night of July 9, 2004, at least two separate work groups were scheduled to work projects in the East River Tunnel: (1) Crescent employees, an STV safety engineer, HMM engineers, and Amtrak pilots working on the Standpipe Project at the east portal of Tunnel Line 1, *see* Deposition of Howard Carter, Jr. ("Carter Dep.") (annexed as Ex. A to Affidavit in Opposition ("Kalman Aff."), filed Mar. 12, 2008 (Docket # 243)), at 40–41; Deposition of Louis Cevasco ("Cevasco Dep.") (annexed as Ex. E to Kalman Aff. and as Ex. B to Joseph Decl.), at 45–47; and (2) Amtrak employees replacing a "buss breaker" approximately 1 mile east of the Standpipe Project, *see* Carter Dep. at 40, 42–43; Deposition of David Zwolinski (annexed as Ex. J to Kalman Aff.), at 25–26. Plaintiffs were part of the group working on the Standpipe Project.[2]

The work group that was replacing the breaker was using a Terex crane. *See* Deposition of Brian Earp (annexed as Ex.

M to Joseph Decl. and as Ex. K to Kalman Aff.), at 21. At about 3:40 a.m. on July 10, 2004, an Amtrak employee lost control of the crane, which began moving west toward the Standpipe Project work site. *See id.* at 42, 56–57; Deposition of David Rollins ("Rollins Dep.") (annexed as Ex. G to Kalman Aff. and as Ex. O to Joseph Decl.), at 71, 75–78, 84. The crane operator, believing the crane was going to derail at the next switch, jumped off. *See* Rollins Dep. at 78–81, 99–100. The crane continued on the tracks, however, and ultimately collided with the Crescent trucks at the Standpipe Project work site, where plaintiffs were working. *See* Deposition of Girolamo Vitale (annexed as Ex. A to Crescent Mem.), at 143–45; Deposition of Edley Gayle (annexed as Ex. F to Crescent Mem.), at 130–33; Cevasco Dep. at 84, 87; Deposition of Jugal Sood (annexed as Ex. K to Crescent Mem.), at 259–61; Rollins Dep. at 115.

### B. *Procedural History*

Plaintiffs brought separate actions against Amtrak for personal injuries allegedly sustained in the collision. *See* Cevasco Fourth Am. Compl., filed Apr. 19, 2007 (Docket # 159); Sood Second Am. Compl., filed Apr. 19, 2007 (05 Civ. 7419, Docket # 80); Adornetti First Am. Compl., filed Apr. 19, 2007 (06 Civ. 6195, Docket # 44); Vitale Compl.; Gayle Compl. Amtrak filed a third-party complaint against Crescent, STV, HMM, and STV/HMM, as well as others. *See* Third Am. Third–Party Complaint, filed Jan. 7, 2008 (Docket # 213) ("Amtrak Compl."), ¶¶ 112–193. Crescent, STV, HMM, and STV/HMM filed counter-claims against Amtrak. *See*

---

2. Cevasco was employed as a project manager by STV. Cevasco Dep. at 12. Vitale was an employed as a driver by Crescent. Vitale First Am. Compl., filed Apr. 19, 2007 (06 Civ. 6196, Docket # 46) ("Vitale Compl."), ¶ 73. Sood was employed as a resident engineer by HMM. Deposition of Jugal Sood (annexed as Ex. C to Joseph Decl.), at 30. Adornetti was employed as a driver by Crescent. Deposition of Girolamo Adornetti (annexed as Ex. F to Joseph Decl.), at 37–38. Gayle was employed as a pilot by Amtrak. Gayle First Am. Compl., filed May 10, 2007 (06 Civ. 6956, Docket # 39) ("Gayle Compl."), ¶ 21.

Crescent's Answer to Third Am. Complaint, filed Mar. 12, 2008 (Docket # 242);[3] HMM's Answer to Third Am. Third–Party Complaint, filed Mar. 24, 2008 (Docket # 256), ¶¶ 278–82.

Amtrak filed the instant motion for partial summary judgment on February 5, 2008.[4] In its motion, Amtrak asserts that Crescent is contractually obligated to defend and indemnify it against the claims of all plaintiffs in these actions, see Amtrak Mem. at 1–2, 15; Amtrak Reply Mem. at 6–12, and that STV, HMM, and STV/HMM are obligated to defend and indemnify it against the claims of Cevasco and Sood, the two plaintiffs employed by STV and HMM, see Amtrak Mem. at 2, 15–16; Amtrak Reply Mem. at 12–17. Crescent, HMM, and STV, together with the joint

venture STV/HMM, have submitted papers opposing the motions, raising various overlapping arguments, all of which are disposed of in the course of our discussion below. For the sake of clarity, we refer to the arguments made in the brief jointly filed by STV and the joint venture STV/HMM as the arguments of STV.

Additionally, HMM filed a cross-motion for summary judgment against Amtrak, seeking dismissal of Amtrak's contractual indemnification claims on the same grounds it opposes Amtrak's motion for summary judgment.[5] While HMM did not seek summary judgment against STV, STV has asserted in response to HMM's cross-motion that, if it is found to have any indemnification obligation, that obligation must be shared between STV and HMM

**3.** Although it appears Crescent intended to file its Answer to Amtrak's Third Amended Third–Party Complaint as Docket # 242, the document actually filed is an older document, dated April 23, 2007, which appears to be Crescent's Answer to Cevasco's Third Amended Complaint. Nevertheless, the other parties replied to this document as though it were an Answer to the Third Amended Third–Party Complaint. See, e.g., Amtrak's Answer to Counter–Claims Asserted in Crescent Contracting, Inc.'s Answer to Third Amended Third–Party Complaint, filed Apr. 4, 2008 (Docket # 268). Similarly, STV never filed an Answer to Amtrak's Third Amended Third–Party Complaint, but other parties filed replies to counter-claims that apparently were raised in STV's Answer. See, e.g., HMM's Answer to STV, Inc.'s Cross–Claim of Third Amended Third–Party Complaint, filed Mar. 25, 2008 (Docket # 261).

**4.** See Notice of Motion, filed Feb. 5, 2008 (Docket # 220); Memorandum of Law in Support of Defendant/Third–Party Plaintiff's Motion for Summary Judgment, filed Feb. 6, 2008 (Docket # 223) ("Amtrak Mem."); Crescent Contracting, Inc.'s Memorandum of Law in Opposition to Defendant/Third–Party Plaintiff's Motion for Summary Judgment, filed Mar. 12, 2008 (Docket # 251) ("Crescent Mem."); Memorandum of Law in Opposition to National Railroad Passenger Corp's Motion for Summary Judgment, filed Mar. 12, 2008

(Docket # 245) ("STV Mem."); Memorandum of Law in Opposition to Amtrak's Motion for Summary Judgment and in Support of Hatch Mott MacDonald's Cross Motion for Summary Judgment, filed Mar. 12, 2008 (Docket # 250) ("HMM Mem."); Memorandum of Law in Further Support of Defendant/Third–Party Plaintiff's Motion for Summary Judgment and in Opposition to Third–Party Defendant Hatch Mott MacDonald's Cross Motion for Summary Judgment, filed Apr. 21, 2008 (Docket # 275) ("Amtrak Reply Mem."). Although these documents were filed separately in each of the five consolidated actions (with the exception of the submissions by HMM and STV, which were filed only in 04 Civ. 5760 and 05 Civ. 7419), we cite only to the docket of 04 Civ. 5760, which contains all relevant submissions.

**5.** See Notice of Cross Motion, filed Mar. 12, 2008 (Docket # 248); HMM Mem.; Memorandum of Law in Opposition to Hatch Mott MacDonald's Motion for Summary Judgment, filed Apr. 21, 2008 (Docket # 271) ("STV Reply Mem."); Amtrak Reply Mem.; Reply Memorandum of Law in Further Support of Third Party Defendant Hatch Mott MacDonald's Cross Motion for Summary Judgment, filed May 5, 2008 (Docket # 278) ("HMM Reply Mem.").

pursuant to the terms of the Joint Venture Agreement. *See* STV Reply Mem. at 7–10. While we address all of HMM's arguments with respect to Amtrak below, we do not address the question of sharing the indemnification obligation inasmuch as neither HMM nor STV has moved for summary judgment on this issue.

## II. *APPLICABLE LEGAL STANDARDS*

### A. *Law Governing Motions for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact "may reasonably be resolved in favor of either party" and thus should be left to the finder of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *Id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, the non-moving party "must come forward with 'specific facts showing there is a *genuine issue for trial,*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)

(quoting Fed.R.Civ.P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005) (quoting *Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423, 428 (2d Cir.2001)). In sum, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

### B. *Choice of Law*

■ Both the Crescent Contract and the STV/HMM Contract provide that they shall be "governed by and construed in accordance with the laws of the District of Columbia without regard to choice of law considerations." Crescent Contract Gen. ¶ 81.1; STV/HMM Contract Gen. ¶ 23. "Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.,* 230 F.3d 549, 556 (2d Cir.2000) (citing *Int'l Minerals & Res., S.A. v. Pappas,* 96 F.3d 586, 592 (2d Cir.1996)).

Here, Amtrak is incorporated and has its principal place of business in the District of Columbia. *See* Declaration of Marvin D. Smith, dated Feb. 1, 2008 (annexed as Ex. Q to Joseph Decl.), ¶¶ 5–6. Moreover, the parties do not dispute that the law of the District of Columbia governs the contracts, and they have relied upon that law in their arguments. *See* Amtrak Mem. at 11–13; Crescent Mem. at 9–10; STV Mem. at 22–24, 27–28; HMM Mem. at 6–7, 11–18. Accordingly, the Court will apply the substantive law of the District of Columbia.[6]

---

**6.** While it is not relevant to the disposition of the pending motions, the Court notes that the Joint Venture Agreement between STV and HMM contains a choice-of-law clause stating that it "shall be construed in accordance with the laws of the State of New York." Joint Venture Agreement ¶ 25.0.

### C. Construction of a Contract Containing an Indemnification Agreement

The District of Columbia Court of Appeals has summarized a court's role in interpreting a contract as follows:

"Fundamentally, when interpreting a contract, 'the court should look to the intent of the parties entering into the agreement.'" [*Dodek v. CF 16 Corp.*, 537 A.2d 1086, 1093 (D.C.1988)] (quoting *Intercounty Constr. Corp. v. District of Columbia*, 443 A.2d 29, 32 (D.C. 1982)[)] (citation omitted). The question of intent is resolved by an objective inquiry, and "[t]he first step" is therefore to determine "what a reasonable person in the position of the parties would have thought the disputed language meant." *Id.* (quoting *Intercounty Constr. Corp.*, 443 A.2d at 32). Contractual provisions are interpreted taking into account the contract as a whole, so as to give effect, if possible, to all of the provisions in the contract. *See* [*Akassy v. William Penn Apts., Ltd. P'ship*, 891 A.2d 291, 303 (D.C.2006)] (noting that "[w]e construe the contract as a whole, giving effect to each of its provisions, where possible") (citation omitted).

*Steele Foundations, Inc. v. Clark Constr. Group, Inc.*, 937 A.2d 148, 154 (D.C.2007).

With respect to the use of extrinsic evidence to interpret a contract, the District of Columbia Court of Appeals has held as follows:

"The meaning of an integrated contract is an issue for the finder of fact only if the contractual language is ambiguous, ..., *i.e.*, where its interpretation depends upon the credibility of extrinsic evidence or upon a choice of reasonable inferences from such evidence." *Dodek v. CF 16 Corp.*, 537 A.2d 1086, 1092 (D.C.1988) (citing *Int'l Bhd. of Painters & Allied Trades v. Hartford Accident & Indem. Co.*, 388 A.2d 36, 43 (D.C.1978)). Whether a contract is ambiguous is a question of law for the court to determine, reviewed *de novo* on appeal. *See id.* at 1092; *Akassy v. William Penn Apts., Ltd. P'ship.*, 891 A.2d 291, 299 (D.C.2006). In determining whether a contract is ambiguous, the court must consider that "contracts are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction." *Dodek*, 537 A.2d at 1093 (quoting *Holland v. Hannan*, 456 A.2d 807, 815 (D.C.1983)). Ambiguity exists only if the court determines that the proper interpretation of the contract cannot be derived from the contractual language exclusively, and requires consideration of evidence outside the contract itself. *See Dodek*, 537 A.2d at 1093.

*Steele Foundations, Inc.*, 937 A.2d at 153.

Finally, with respect to indemnity agreements, the District of Columbia Court of Appeals has held that "such agreements are narrowly construed by the courts 'so as not to read into [them] any obligations the parties never intended to assume.'" *Rivers & Bryan, Inc. v. HBE Corp.*, 628 A.2d 631, 635 (D.C.1993) (quoting *Haynes v. Kleinewefers & Lembo Corp.*, 921 F.2d 453, 456 (2d Cir.1990)) (alteration in original). On the issue of whether a party may enter into an agreement requiring indemnification for its own negligence, it is settled that such agreements will be upheld as long as there is a "clear intention ... from the face of the contract" that indemnification for negligence was contemplated. *Rivers & Bryan*, 628 A.2d at 635 (citing cases). "[N]o particular form or words are needed but the intent to waive negligence must be clear." *W.M. Schlosser Co. v. Maryland Drywall Co.*, 673 A.2d 647, 653 (D.C.1996) (quoting *Moses–Ecco Co. v. Roscoe–Ajax Corp.*, 320 F.2d 685, 688 (D.C.Cir.1963)); *see id.* at 653–54 (language such as "indemnify from any and all claims," "indemnify against any loss," or

"assume all liability for any and all loss" is "sufficiently comprehensive as to include indemnification for damages resulting from the negligence of [indemnitee]"). "When the terms of an indemnity agreement are . . . broad and comprehensive, the presumption is that if the parties had intended some limitation of the all-embracing language, they would have expressed such limitation." *Id.* at 654 (quoting *Princemont Constr. Corp. v. Baltimore & Ohio R.R.*, 131 A.2d 877, 878 (D.C.1957)) (internal quotation marks omitted).

### III. *DISCUSSION*

#### A. *Whether Amtrak's Motion is Premature*

■ Crescent argues that Amtrak's motion is "premature" because "[p]ursuant to D.C. law, the validity, interpretation, and/or enforceability of the indemnification clauses are dependent upon a finding of liability and on what grounds the liability is based, particularly in regards to defense costs." Crescent Mem. at 10. Crescent does not cite any authority for this proposition and the Court is unaware of any bar under District of Columbia law that would prevent a party from seeking summary judgment as to an indemnity obligation where, as here, there is a broad indemnification clause that includes a duty to defend, a lawsuit has actually been filed against the indemnitee, and the indemnitee's claim is being brought as a third party action. *See generally Harris v. Rivera*, 921 F.Supp. 1058, 1062 (S.D.N.Y.1995) (permitting such a suit under New York law). In the absence of the citation of a single case from the District of Columbia (or any other jurisdiction) stating otherwise, Amtrak's claim cannot be dismissed on this ground.

It appears that Crescent's real argument is that there may be circumstances under which it would have no indemnification obligation under the Amtrak contract.

Specifically, Crescent asserts that it should not be liable if punitive damages were awarded based on Amtrak's gross negligence or "wanton, reckless and willful disregard for the safety of the plaintiffs and the general public." *See* Crescent Mem. at 10, 23–24. HMM makes a similar argument, asserting that indemnity cannot cover "reckless, wanton or willful misconduct." HMM Mem. at 15–18.

In response, Amtrak has stated that it seeks a ruling only regarding the parties' duty to defend and Amtrak's right to indemnification against any "compensatory damage claims." *See* Amtrak Reply Mem. at 21 & n. 10. Thus, we take Amtrak's response to mean that is seeking partial summary judgment on the question of whether Crescent, STV, HMM, and STV/HMM are obligated to defend Amtrak and whether they are obligated to indemnify Amtrak against claims arising out of Amtrak's ordinary negligence. Accordingly, Amtrak's summary judgment motion is construed as a motion for "partial" summary judgment with respect to its claim of indemnification.

#### B. *Indemnification Under the Crescent Contract*

■ Paragraph 68.1 of the Crescent Contract provides that Crescent must indemnify Amtrak for any personal injury claims "arising out of or in any degree directly or indirectly caused by or resulting from" the "activities of, or Work performed by" Crescent. Crescent Contract Gen. ¶ 68.1. Crescent does not dispute that all five plaintiffs were working on the Standpipe Project, which was the "Work performed by" Crescent under the contract. *See* Crescent Mem. at 2–3; Defendant/Third–Party Plaintiff's 56.1 Statement of Undisputed Material Facts, filed Feb. 5, 2008 (Docket # 222), ¶¶ 10, 31, 35, 43, 44, 47; Defendant/Third–Party Defen-

dant Crescent Contracting, Inc.'s Statement of Material Facts, filed Mar. 12, 2008 (Docket # 253), ¶¶ 10, 31, 35, 43, 44, 47. Rather, Crescent argues that the plaintiffs' claims do not "aris[e] out of" Crescent's work on the Standpipe Project because their injuries were caused by an instrumentality that originated on another, unrelated project: that is, the crane from the breaker project that collided with the Crescent trucks at the Standpipe Project. *See* Crescent Mem. 10–11; 13–21. Crescent argues that it has no liability because "[t]here was no causal connection between the crane and Crescent's work beyond the mere presence of the plaintiffs on Crescent's trucks when the free wheeling crane hit it." *Id.* at 11. Crescent notes that the "crane was in no way associated with Crescent's work." *Id.* at 14.

In other words, Crescent reads the words "arising out of ... the .. Work performed by [Crescent]" as limited to injuries that were actually caused by an incident originating from the Crescent site. In Crescent's view, because the original cause of the injuries was the release of the crane at the breaker project site, the injuries the crane caused at the Standpipe Project work site do not come within the indemnification clause.

The Court rejects this reading of the clause as inconsistent with its plain and unambiguous meaning. The term "arising out of" is "broad and sweeping." *See W.M. Schlosser Co.,* 673 A.2d at 653; *accord id.* at 654 ("arising out of" characterized as "all-embracing") (citation omitted). The injuries to the various individuals at the Crescent site "arose out of" their work there, even though the cause of the injuries emanated from a spatially distant source.

The parties have not cited to a District of Columbia case on point. Nonetheless, the case of *Mead v. National Railroad Passenger Corp.,* 676 F.Supp. 92 (D.Md. 1987), is instructive. In *Mead,* an Amtrak train passing by a work site struck a contractor's automatic welder on the site, pieces of which then struck an employee. 676 F.Supp. at 95–96. Applying District of Columbia law, *Mead* concluded that the employee's injuries occurred "as a result of" the work performed by the contractor. *Id.* at 96.[7] If anything, the term "as a result of" is less encompassing than the term "arises out of." Nonetheless, *Mead* found the injuries to have occurred "as a result of" the contractor's work because "[b]ut for the presence of this welder, with which [the contractor] was performing work for Amtrak, [the] injuries would not have occurred." *Id.*

Numerous cases in other jurisdictions have interpreted the phrase "arising out of" or "arises out of" to apply to situations where some external cause generated the injuries at issue. Thus, in *Vitty v. D.C.P. Corp.,* 268 N.J.Super. 447, 633 A.2d 1040 (App.Div.1993), an employee of a towing contractor was seated in a parked tow truck in a designated area when the tow truck was struck by another vehicle that was forced off the road by a drunk driver. 268 N.J.Super. at 450–51, 633 A.2d 1040. Noting that "the words 'arising out of' should be construed in accordance with their common and ordinary meaning as referring to a claim 'growing out of' or having its 'origin in' the subject matter of the towing agreement," *id.* at 453, 633 A.2d 1040, the Court concluded that, because the employee was "on duty and acting in the performance of his employment

---

**7.** In a separate part of its analysis, *Mead* also noted that the indemnification provision in a different clause required indemnification for injuries "to any of the employees of AMTRAK while on the premises of AMTRAK in connection with operations performed or to be performed under the contract." 676 F.Supp. at 96–97.

responsibilities," *id.* at 451, 633 A.2d 1040, his injuries arose out of the performance of the contract, *id.* at 453, 633 A.2d 1040, even if the injuries "resulted from a freak accident that perhaps could not have been envisioned by the parties," *id.*

In *Liberty Mutual Fire Insurance Co. v. E.E. Cruz & Co.*, 475 F.Supp.2d 400 (S.D.N.Y.2007), property that had been left on a work site by a city contractor was damaged when the city connected a nearby sewer pipe prematurely. 475 F.Supp.2d at 403. Although the contractor was not actively working at the time, and "the cause of the occurrence was allegedly unrelated to ... work under the Contract," these circumstances "d[id] not preclude the claim from 'aris[ing] out of' [the contractor's] 'ongoing operations.'" *Id.* at 411. The Court gave a broad construction to the term "arising out of," noting that "[t]he New York Court of Appeals has held that the phrases 'based on' and 'arising out of' ... are unambiguous and legally indistinguishable, and that both call for the application of a 'but-for' causation test in order to determine coverage." *Id.* at 409 (citation and some quotation marks omitted).

Case law is replete with similar fact patterns—that is, situations where an injury or claim was held to "arise out of" work at a location even though the actual cause of the injury originated from matters remote from the work at the site itself. *See, e.g., Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 357 (Alaska 2001) (injuries held to "arise out of" steel work where the wind blew scraps of asbestos onto the work site) ("the phrase 'arising out of [the indemnitor's] performance' is very broad and includes claims for any injuries sustained by the indemnitor's employees while on the job"); *Perkins v. Rubicon, Inc.*, 563 So.2d 258, 259 (La.1990) (where employee was injured at the contractor's work site because plant owner accidentally released toxic gas at an unrelated work site, employee's injuries were held to be "arising out of" the performance of the contract inasmuch as the employee "would not have been present at the site to be injured but for the performance of work under the contract"); *Consol. Edison Co. of N.Y. v. Hartford Ins. Co.*, 203 A.D.2d 83, 83, 610 N.Y.S.2d 219 (1st Dep't 1994) (where subcontractor's employee was injured by steam valve, employee's injuries arose out of his work because the term "arising out of [the contractor's] operations ... focuses not upon the precise cause of the accident ... but upon the general nature of the operation in the course of which the injury was sustained").

Courts construing the phrase "arising out of" in the context of indemnity agreements have recognized that it refers to "the scope of the employment of the person injured and the site of the occurrence," *George A. Fuller Co. v. Fischbach & Moore, Inc.*, 7 A.D.2d 33, 35, 180 N.Y.S.2d 589 (1st Dep't 1958), *lv. denied*, 6 N.Y.2d 705, 187 N.Y.S.2d 1025, 159 N.E.2d 355 (1959)—that is, not to the original cause of the injury. *See also Wallace v. Sherwood Constr. Co.*, 877 P.2d 632, 634 (Okla.App. 1994) (because the injured employee "was on the job site as [the subcontractor's] agent, performing duties required ... under the subcontract," and "[b]ut for this performance of the subcontract, [he] would not have been injured," the injuries arose out of the performance of the subcontract).

In arguing that the phrase "arising out of" requires something more than the "mere presence of the injured parties on the work site," Crescent relies primarily on *Bland v. L'Enfant Plaza North*, 473 F.2d 156 (D.C.Cir.1972), and *National Union Fire Insurance Co. of Pittsburgh v. Port Authority of New York and New Jersey*, 261 A.D.2d 259, 690 N.Y.S.2d 260 (1st Dep't), *lv. denied*, 94 N.Y.2d 754, 701

N.Y.S.2d 340, 723 N.E.2d 89 (1999). *See* Crescent Mem. at 15–16. *Bland v. L'Enfant Plaza North,* however, is irrelevant to this case. *Bland* held only that a broad indemnification clause does not exclude losses caused by the indemnitee's own negligence. 473 F.2d at 157. Indeed, a party in *Bland* attempted to argue, as Crescent does here, that the mere presence of the employees on the work site when they were injured was insufficient to establish that the injuries "arose out of" the work, and the Court characterized this argument as "seek[ing] to have us split hairs." *Id.*

*National Union Fire Insurance Co.* did not involve a workplace injury but rather a provision in a hotel's lease agreement requiring the lessor to indemnify the landowner for any injuries arising out of the "use or occupancy" of the hotel premises. 261 A.D.2d at 259–60, 690 N.Y.S.2d 260. The court held that injuries in the hotel resulting from the 1993 bombing of the World Trade Center did not come within this clause. *Id.* at 260, 690 N.Y.S.2d 260. In support of this conclusion, the court cited to only one other case, *Sea Insurance Co. v. Westchester Fire Insurance Co.,* 849 F.Supp. 221, 226 (S.D.N.Y.1994), *aff'd,* 51 F.3d 22 (2d Cir.1995), which was construing an insurance policy's exclusion of coverage for injuries arising out of "any premises owned or rented to any insured" where the premises was "not an insured location." 849 F.Supp. at 224. *Sea Insurance Co.* found that this clause did not exclude coverage for injuries caused by an automobile driven by a person employed at the location merely because she was on the way to the location, and not at the location, at the time the accident occurred. *Id.* at 226. It is difficult to see how *Sea Insurance Co.* supports the conclusion of the Court in *National Union Fire Insurance Co.,* which involved injuries to persons actually in the covered premises. In any event, the fact that *National Union Fire Insurance Co.* was not construing whether an injury arose out of work at a work site; that application of its rule here would be inconsistent with other New York cases, such as *Consol. Edison Co. of N.Y. v. Hartford Ins. Co.,* 203 A.D.2d 83, 83, 610 N.Y.S.2d 219 (1st Dep't 1994); and that such application is also inconsistent with the broad interpretation given to the term "arising out of" by the District of Columbia courts, it does not alter our conclusion as to the plain meaning of the contract language in this case.

Crescent also relies on *Rivers & Bryan, Inc. v. HBE Corp.,* 628 A.2d 631 (D.C. 1993). *See* Crescent Mem. at 14. But that case involved a contract in which indemnification was limited to losses "resulting from subcontractor's failure" to "comply with all federal, state and local statutes and/or ordinances relating to the performance of this subcontract." 628 A.2d at 634. Here, there was no limitation at all as to the cause of the damage.

Crescent further argues that the word "arise" includes "an expression of causation flowing from the work, not to the workers or the worksite." Crescent Mem. at 17. It is not clear what Crescent means by this argument. What is clear, however, is that the definitions supplied by Crescent of the term "arise"—including "to originate from a source" and "to come into being or to attention"—contain no element of causation. As previously discussed, Crescent does not contend that the plaintiffs were injured at their homes, on their way to work, or at some other work site. Rather, it concedes that they were injured at the Standpipe Project itself in the course of their performance of the work called for by the contract to take place at that work site. As a result, the workers' injuries "originated from" that work site and "came into being" because of their work at that site, even if the chain of

causation that led to the injuries began at another location.

Crescent's argument is perhaps best exemplified by its contention that an indemnification clause that called for indemnification for harm arising out of "work performed under the contract" would have been sufficiently broad to require indemnification but that the one here—calling for indemnification for harm arising out of "work performed by Contractor"—is not. Crescent Mem. at 14–15. The Court sees no distinction between these two terms. The work performed by Crescent is the very work that was being performed under the contract. The injuries here arose from that work.

Because Crescent obligated itself to defend and indemnify Amtrak for any injuries arising out of work at the Standpipe Project, it must defend and indemnify Amtrak against the claims of the plaintiffs here.[8]

## C. *Indemnification Under the STV/HMM Contract*

Paragraph 35(B) of the STV/HMM Contract similarly contains an extremely broad indemnity clause. That paragraph provides in relevant part as follows:

> Contractor [STV/HMM] shall be responsible for all damages and expenses on account of injuries (including death) to any of its employees, agents or subcontractors while on the premises of Amtrak and shall indemnify, defend, and hold Amtrak harmless from all claims or damage suits which may arise in consequence of such injuries irrespective of any negligence or fault of Amtrak.

STV/HMM Contract Gen. ¶ 35(B). This paragraph's requirement that STV/HMM "shall indemnify, defend and hold Amtrak harmless" is without limitation. It applies to any claims that arise from any injuries of STV/HMM's employees, agents or subcontractors "while on the premises of Amtrak." It further provides that this obligation to indemnify exists "irrespective of any negligence or fault of Amtrak."

In the face of this broad indemnification clause, STV and/or HMM make a number of arguments in an effort to avoid the paragraph's enforcement, none of which is persuasive.

---

**8.** Crescent argues that a separate indemnity provision, Paragraph 68.2, does not unambiguously obligate Crescent to indemnify Amtrak for Amtrak's own negligent acts. *See* Crescent Mem. at 11, 21–23. Given the scope of Paragraph 68.1, it is not necessary to reach this question. In any event, Paragraph 68.2 obligates Crescent to "indemnify, defend, and hold Amtrak harmless from *all* claims or damage suits which may arise in consequence of [injuries (including death) to any of Crescent's employees, agents or subcontractors while on the premises of Amtrak]." Crescent Contract Gen. ¶ 68.2 (emphasis added). The language in this paragraph includes no limitations regarding acts or omissions of either party. The language is not susceptible to any interpretation that would obviate the indemnity obligation in the event Crescent could show that the claim was caused by Amtrak's negligence. *See Bland,* 473 F.2d at 157 (indemnification language "must necessarily" cover the negligence of the contractor, who was the "only other significant party besides the subcontractor in a position to cause any losses arising out of . . . this contract") (internal quotation marks omitted); *Moses–Ecco Co.,* 320 F.2d at 688 ("Since the parties specified that 'all' losses on 'any' claims included those of [sub-contractor]'s employees, we think further specification would be superfluous and ritualistic. Moreover, it would appear that no valid claim by an employee of [sub-contractor] could arise against [contractor] except through [contractor]'s own negligence."). Thus, even if Crescent were not already obligated to defend and indemnify Amtrak under Paragraph 68.1, Crescent would be obligated by Paragraph 68.2 to defend and indemnify Amtrak against the claims of Crescent employees Adornetti and Vitale.

1. *Connection Between the Indemnity Provision and the Work Under the Agreement*

▮ HMM argues that Paragraph 35(B), when read separately from the surrounding paragraphs, is "vague, ambiguous, and fails to pas[s] the 'reasonableness' test required in *Patterson v. District of Columbia,* 795 A.2d 681 (D.C.Ct.App. 2002)" because it does not require a "reasonable connection to the services intended by the ... underlying agreement." HMM Mem. at 11; *see Patterson,* 795 A.2d at 683 ("in deciding whether the contract language is susceptible of clear meaning, we look to the contract language itself, and ask ourselves generally what a reasonable person in the position of the parties would have thought the disputed language meant") (citation and internal quotation marks omitted). HMM argues that the indemnity language "does not even attempt to apply the indemnity to the construction management services contemplated in the agreement," HMM Mem. at 11, and that the language "ignores the underlying services to be rendered by the indemnitor," *id.* at 12.

The problem with HMM's argument is that it forces an artificial narrowing on the scope of the indemnity language contained in the contract. The indemnity provision here applies to "all" claims that arise "in consequence of" any injuries of STV/HMM's employees, agents or subcontractors "while on the premises of Amtrak." STV/HMM Contract Gen. ¶ 35(B). It is difficult to imagine a more broadly-worded clause. By arguing that the language "ignores the underlying services to be rendered by the indemnitor," HMM Mem. at 12, or fails to "specifically incorporate the agreed upon services," *id.* at 15, HMM essentially faults it for being too broad and encompassing. Apparently, HMM would require that the clause repeat what is obvious from the agreement itself: that the

indemnity obligation is included in a contract in which the indemnitor was required to provide specific services to Amtrak—that is, construction management services for the Standpipe Project. A clause in a contract is not rendered ambiguous simply because the contract does not repeatedly advert to the context in which the clause was written. Paragraph 35(B) could only have created an indemnity obligation relating to the services called for under the contract—not one relating to some other work that STV/HMM might have been performing. Indeed, as HMM concedes, *see* HMM Mem. at 3, the contract governs the very work that was underway when it was interrupted by the runaway crane.

It appears that HMM's real point is that the accident here arose "not because of the services to be rendered pursuant to the terms of the agreement but due to external forces involving a crane operator losing control of a crane in an independent work project"—that is, the breaker installation project. *Id.* at 12. HMM notes that the indemnitor had no control over the breaker installation project, that it did not even know about it, and thus that the breaker project could not have been "foreseen or intended at the time ... the agreement was signed." *Id.* HMM goes on to note that the agreement was "specifically written to provide construction management services during the installation of standpipe," *id.* at 12–13, and even noted that the rail lines involved in the accident were to be closed, *id.* at 13. HMM reasons that the agreement thus could not have "intended" that the indemnity clause would cover the particular accident that incurred here. STV similarly argues that the indemnification clause cannot cover injuries that were caused by an event originating at the breaker project because STV/HMM had no obligations under the contract with respect to the performance of the breaker project, that the breaker project was the

sole responsibility of Amtrak, and that STV/HMM was responsible only for the Standpipe Project. STV Mem. at 10–13, 24–30.

None of these facts, however, can change the clear meaning of the indemnification clause, which requires indemnity for "all" damages incurred by STV/HMM, its employees or agents. The clause does not limit claims to those that were caused by an act or omission at the particular job site. It does not limit indemnification to potential threats known to STV/HMM or controlled by STV/HMM. Nor does the clause suggest that the origin of the causal force that generates the "claims" or "injuries" must emanate from a point within the physical area of the work site. Contrary to STV's suggestion, this reading does not mean that STV/HMM is being given "obligations and responsibilities to other projects such as the Buss Breaker Project." *Id.* at 12. It is responsible for no injuries at that site.[9]

The Court also rejects HMM and STV's argument that because they had no reason to know about the breaker project, they could not have agreed to indemnify for any injuries that derived from acts or omissions at the breaker project. STV Mem. at 7, 22–23; HMM Mem. at 12. As STV puts it, "[i]t defies logic . . . that STV and/or STV/HMM would agree to defend and/or indemnify Amtrak with respect to the Buss Breaker Project when STV and STV/HMM was not aware of the Buss

Breaker Project until after the accident." STV Mem. at 23. In essence, STV is arguing that the clause does not cover the accident because, when the parties drafted the agreement, STV could not have contemplated the sort of accident that occurred here.

■ However, the intent of the parties is judged by the particular language they use. *See Tillery v. D.C. Contract Appeals Bd.,* 912 A.2d 1169, 1176 (D.C.2006) ("the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, regardless of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking") (citations and internal bracketing omitted); *see also Segal Wholesale, Inc. v. United Drug Serv.,* 933 A.2d 780, 784 (D.C.2007) ("where a document is facially unambiguous, its language should be relied upon as providing the best objective manifestation of the parties' intent") (citing *Hercules & Co. v. Shama Rest. Corp.,* 613 A.2d 916, 927 (D.C.1992)) (internal quotation marks omitted).[10] Where the parties write a broad clause, such as the one agreed upon here, it will necessarily cover any events that come within its language, even if it could later be shown that the parties did not foresee all possible events that might be encompassed by the language agreed on. Thus, the fact that a particular event was not contemplat-

---

9. STV's reliance on *Zamierowski v. National Railroad Passenger Corp.,* 2006 WL 1816377 (S.D.N.Y. June 28, 2006), *see* STV Mem. at 29–30, for this point is unavailing as it is irrelevant. *Zamierowski* refused to enforce an indemnity obligation only because the Court found that the obligation was contingent on the indemnitee's completion of certain work that was the subject of the contract. 2006 WL 1816377, at *6–7. Also of no relevance is STV's assertion that "[l]iability may not be imposed upon a party who merely furnishes the occasion for the occurrence of the event

but is not one of its causes." STV Mem. at 30. The cases cited in support of this provision involve the standards of causation in tort suits arising out of motor vehicle accidents. They have nothing to do with obligations that parties may undertake by contract.

10. Thus, it is of no moment that a fact witness supplied during this litigation by Amtrak answered the question "Are you unable to interpret the indemnification language?" with "Yes." *See* STV Mem. at 10.

ed does not mean that the parties did not "intend" that the event be covered by the broad language of the indemnity clause.[11]

### 2. Indemnification with Respect to Cevasco's Claims

■ HMM asserts that it is not obligated to indemnify Amtrak for Cevasco's claims because Cevasco was an employee of STV. *See* HMM Mem. at 2–3; *accord id.* at 5–9. STV has not made a parallel argument with respect to Sood, who was an employee of HMM.

To support this argument, HMM notes that the Joint Venture Agreement between STV and HMM relating to the Standpipe Project has provisions stating that (1) the joint venture "shall not have employees of its own, but shall perform the services with the employees of each party," Joint Venture Agreement ¶ 7.5; (2) that "[i]t is not the purpose or intent of the parties … to constitute either party as a partner, agent, or representative of the other party," *id.* ¶ 1.5; and (3) that each party had to obtain its own worker's compensation insurance, *id.* ¶ 14.1. *See* HMM Mem. at 5; HMM Reply Mem. at 3–10.[12]

HMM then points to the indemnity clause in the STV/HMM Contract, which states that the "Contractor"—that is, the STV/HMM joint venture—shall be responsible for damages resulting from injuries "to any of its employees, agents or subcon-

tractors"—and that the joint venture must indemnify Amtrak for any claims arising from such injuries. *See* HMM Mem. at 6; HMM Reply Mem. at 3–5. HMM concludes that the indemnity provision with respect to Cevasco's claims "can never be applied to either HMM, individually, or to the STV/HMM joint venture" on the ground that neither of these entities employed Cevasco. HMM Mem. at 6. Instead, HMM argues that paragraph 35(B) means that each of the two joint-venture entities is responsible exclusively for its own employees.

HMM's argument fails, however, because it misreads the word "its" in the indemnity clause. "Its" precedes "employees, agent or subcontractor" and thus identifying who "it" is tells us whose employees, agents or subcontractors would have to be the subject of indemnification. HMM's argument seems to assume that the "its" in paragraph 35(B) refers *either* to HMM or to STV—apparently depending on whose employee has been injured. In fact, the "its" in this clause refers not to either entity separately but rather to the "Contractor." The "Contractor" is defined as "the party performing construction management services under this contract." STV/HMM Contract Gen. ¶ 1. The "party performing construction management services" is in turn defined as "STV/HMM; a joint venture of STV Incorporated … and

---

**11.** STV briefly argues that the "Indemnification Provisions"—presumably including Paragraph 35(B)—"[a]re ambiguous" because a different section, Paragraph 35(A), contains an indemnification clause that is limited to indemnification for negligent acts or omissions of the contractor. STV Mem. at 13–14. There is nothing in Paragraph 35(A), however, that purports to give meaning to Paragraph 35(B). If anything, the existence of the more limited language in Paragraph 35(A) makes even more obvious the broad sweep of the indemnity clause contained in Paragraph 35(B).

**12.** While it does not affect the disposition of the instant motions, the assertion in Article 1.5 of the Joint Venture Agreement that STV and HMM were not acting as each other's agent is seemingly superseded with respect to STV's and HMM's obligations to Amtrak inasmuch as the STV/HMM Contract provided as follows:

In the absence of any specific limitation of authority, each Contractor party shall act as the agent of the other with full and complete authority to bind the other with respect to any and all transactions arising out of performance under the Contract.

STV/HMM Contract ¶ 12.

Hatch Mott MacDonald." STV/HMM Contract at 1. In other words, the joint venture STV/HMM is made responsible by paragraph 35(B) to provide indemnification to Amtrak. And, under this paragraph, STV/HMM is responsible for claims by the "employees, agents or subcontractors" of the joint venture STV/HMM. Thus, the only question to be decided is whether Cevasco is an "employee, agent, or subcontractor" of the joint venture STV/HMM.

We accept *arguendo* HMM's assertion that the joint venture has no employees and that neither STV nor HMM is the agent of the other. But this does not address whether STV and HMM or their employees were agents of the joint venture STV/HMM. HMM does not dispute that a separate provision of the contract required that STV and HMM be jointly responsible for the joint venture's obligations to perform the Amtrak contract.[13] Thus, STV/HMM's responsibilities to perform the Amtrak contract were assumed by both HMM and STV. As a consequence, the contract could only have been performed by individuals operating under the auspices of HMM or STV—that is, their employees. Indeed, as HMM notes, the Joint Venture Agreement provides that the joint venture "shall not have employees of its own, *but shall perform the services [required under the Amtrak contract] with the employees of each party*." Joint Venture Agreement ¶ 7.5 (emphasis added). Thus, any worker on the project employed by either HMM or STV was acting as the agent of the joint venture STV/HMM. Because Cevasco was an employee of STV, he was acting as an agent of the joint venture STV/HMM and thus comes within the indemnity clause.

In sum, the indemnity obligation unequivocally requires the joint venture STV/HMM to indemnify Amtrak for any claims by any persons acting as agents of STV/HMM. These agents include both STV, HMM, and their employees. It thus does not matter whose particular employee is injured for purposes of enforcing the indemnity obligation as long as that person is acting as the agent of the joint venture STV/HMM in its performance of the contract. Both Cevasco and Sood were acting as agents of the joint venture in doing their work on the project and thus any harm to them comes within the indemnity clause.

### 3. *Material Breach*

■ STV argues that the indemnification clauses are unenforceable because Amtrak breached a material provision of the contract, allegedly requiring Amtrak to inform STV/HMM of "any other Amtrak/LIRR involvement that may have any impact on the contract." STV Mem. at 16 (quoting STV/HMM Contract ¶ 3.2.5(A)(3)). STV cites no case law in support of this argument and thus it is questionable whether even STV takes the argument seriously. In any event, it is rejected. A material breach is one that "goes to the 'essence' and frustrates substantially the purpose for which the contract was agreed to." *United States ex rel. Bricks, Blocks & Concrete Co. v. Frontier Ins. Co.*, 2001 U.S. Dist. LEXIS 24451, at *12 (D.D.C. Apr. 23, 2001) (citing *Keefe Co. v. Americable Int'l, Inc.*, 755 A.2d 469, 475 (D.C.2000)); *see also Greyhound Lines, Inc. v. Bender*, 595 F.Supp. 1209, 1224 (D.D.C.1984) (listing factors of material breach); *Fowler v. A & A Co.*, 262 A.2d 344, 347 (D.C.1970) (material breach

---

**13.** The Services Contract between STV/HMM and Amtrak provides:

> The Contractor hereunder shall be comprised of two parties ... each of which separately represent and warrant that each

shall be jointly and separately liable for the performance of the Contract in accordance with the terms and conditions hereunder. STV/HMM Contract ¶ 12.

exists where a party is "receiving something substantially less or different from that for which he bargained") (internal quotation marks and citation omitted). The District of Columbia Court of Appeals has cited with approval case law holding that "[f]or a breach to be material, it must be so serious to destroy the essential object of the agreement." *3511 13th Street Tenants' Ass'n v. 3511 13th Street, N.W. Residences, LLC*, 922 A.2d 439, 445 (D.C. 2007) (quoting *Ranes v. Am. Family Mut. Ins. Co.*, 219 Wis.2d 49, 57, 580 N.W.2d 197 (1998)).

The provision STV points to is one that requires STV/HMM to hold a pre-construction conference with Amtrak and other personnel—one that would have occurred years before the accident here. The contract states that the conference is intended to "ensure that all parties have a clear understanding of the contract requirements and any other Amtrak/LIRR involvement that may have any impact on the contract." *See* STV Mem. at 16 (quoting STV/HMM Contract ¶ 3.2.5). While STV asserts that Amtrak's failure to inform it of the other projects in the tunnels constituted a material breach of the STV/HMM Contract, the language of the contract does not specifically require that Amtrak inform STV/HMM of all other projects in the tunnels. Even if it could be so construed, STV has not shown that any such requirement would go to the "essence" or the purpose of the contract and that the failure to do so "destroy[ed] the essential object of the agreement." *3511 13th Street Tenants' Ass'n*, 922 A.2d at 445.

### 4. *Further Discovery*

■ STV asserts that Amtrak's motion for summary judgment should be denied because it cannot oppose it without further discovery responses that Amtrak has not yet provided. *See* STV Mem. at 17–22. It asserts it needs to depose a Marvin Smith on the issue of the parties' intent regarding the indemnification clause, *see id.* at 17–18; that it needs documents from the "contract file" that might bear on the parties' intent, *id.* at 18, 21; and that it requires documents regarding the breaker project to show that STV/HMM had no involvement with that project, *see id.* at 18, 21–22. The issues for which the discovery is sought, however, are not relevant to the resolution of Amtrak's motion. First, we assume that STV/HMM had no obligations or responsibilities with respect to the breaker project. Second, the intent of the parties may not be established from extrinsic evidence where the contract is not ambiguous. *See Steele Foundations, Inc.*, 937 A.2d at 153; *accord N.P.P. Contractors, Inc. v. John Canning & Co.*, 715 A.2d 139, 142 (D.C.1998) ("Because the contract language is unambiguous, we do not consider the testimony of N.P.P.'s president . . . concerning his subjective intent as to the scope of the indemnification clause.") (citation omitted); *Dodek*, 537 A.2d at 1092 ("Where a contract is unambiguous . . . 'summary judgment is appropriate . . . since, absent such ambiguity, a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence.' ") (quoting *Holland v. Hannan*, 456 A.2d 807, 815 (D.C.1983)). As already discussed, the indemnification clause is unambiguous with respect to the obligations of STV/HMM.

## IV. *CONCLUSION*

For the foregoing reasons, Amtrak's motions for partial summary judgment (consisting of Docket # 220 in 04 Civ. 5760; Docket # 133 in 05 Civ. 7419; Docket # 87 in 06 Civ. 6195; Docket # 91 in 06 Civ. 6196; and Docket # 75 in 06 Civ. 6956) should be granted. HMM's cross-motions for summary judgment (consisting of Docket # 248 in 04 Civ. 5760; Docket # 158 in 05 Civ. 7419) should be denied.

420

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. *See also* Fed.R.Civ.P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Paul A. Crotty, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Crotty. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).